698 F.2d 1138
 31 Fair Empl.Prac.Cas. 93, 31 Empl. Prac.
Dec. P 33,381,
12 Fed. R. Evid. Serv. 1187
Patricia PERRYMAN, on behalf of herself and all persons
similarly situated, Helen Jackson and Finesse
Smith, Plaintiffs-Appellees,
v.
JOHNSON PRODUCTS COMPANY, INC., Defendant-Appellant.
 No. 82-8316.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 22, 1983.
 
 Alston, Miller & Gains, Sidney O. Smith, Jr., Atlanta, Ga., Sonnenschein, Carlin, Nath & Rosenthal, Duane C. Quaini, Robert C. Johnson, Chicago, Ill., for defendant-appellant.
 Walker, Hollingsworth & Jones, John W. Walker, Little Rock, Ark., Wiley A. Branton, Washington, D.C., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before RONEY and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 TUTTLE, Senior Circuit Judge:
 
 
 1
 This appeal challenges the finding of the district court that the defendant, Johnson Products Company, Inc., violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Secs. 2000e et seq.[1] , by discriminating against women in hiring, promotion, and termination practices. The court found that the plaintiffs had proven both individual acts of discrimination and a pattern or practice[2] of discrimination affecting the plaintiff class. This appeal also seeks relief from the subsequent order of the district court granting individual and injunctive relief to the plaintiff class. Because of the district court's erroneous legal analysis of the allegations of individual instances of discrimination, we find ourselves unable satisfactorily to review the district court's order; therefore, we vacate and remand for further consideration by the district court.
 
 I. THE FINDING OF CLASSWIDE DISCRIMINATION
 A. Introduction
 
 2
 Defendant Johnson Products Company is a cosmetics manufacturer and distributor with its principal offices located in Chicago, Illinois. Its beauty aid products are sold primarily to black consumers, and it does business throughout the United States and in several countries on the African continent.
 
 
 3
 Plaintiff Patricia Perryman was employed by Johnson Products as a sales representative from July 1971 until her termination in July 1974. Plaintiff Helen Jackson Reddick was employed by Johnson Products as a sales representative from January 1973 until her termination in April 1975. Neither woman was ever promoted above the entry level position of sales representative. Plaintiff Finesse Smith Ward was denied employment with Johnson Products in August 1974.
 
 
 4
 In the court below, these three named plaintiffs alleged on behalf of themselves and all persons similarly situated[3] that Johnson Products had discriminated against women in hiring, firing, and termination decisions in the company's retail and professional sales division. Perryman and Reddick further alleged that their terminations constituted retaliatory discharges for sex discrimination complaints filed with the Equal Employment Opportunity Commission. The plaintiffs presented additional evidence of individual acts of discrimination against class members Claudette Trufant, Ann Smith, Rolena Porter, Diane Bradley, Barbara Isiah, and Isabel Paulding.
 
 B. The District Court Opinion
 
 5
 In its order of December 23, 1981, the district court found that the plaintiffs had successfully proven a pattern or practice of disparate treatment[4] on account of sex of the plaintiffs and their class in hiring, promotion, and termination decisions. The court also found that plaintiffs Perryman and Reddick had proven retaliation for the filing of EEOC charges. In conclusion, the district court stated, "[The] defendant has not articulated any legitimate, non-discriminatory reasons for its actions ..." We find this conclusion to be clearly erroneous; this statement by the district court compels us to conclude that the court did not give proper weight to the evidence presented by Johnson Products, and we remand so that we may be certain that the defendant received a full and fair consideration of the merits of its case.[5]
 
 C. The Applicable Legal Analysis
 
 6
 In an action alleging discriminatory treatment by an employer on the basis of race, color, religion, sex or national origin, an individual plaintiff must prove discriminatory motive. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Since this motive or intent is seldom capable of proof by direct evidence, the Supreme Court has established a legal framework which allows a court to infer discriminatory motive on the basis of circumstantial evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981).
 
 
 7
 The three-part test created by the Court requires, first, that the plaintiff establish a prima facie case of illegal discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. Though the Court in McDonnell Douglas considered an allegation of discrimination in hiring, the elements deemed by the Court necessary to a prima facie showing of hiring discrimination[6] have been modified and broadly applied to all types of illegal discrimination in the employment process. For example, this Court has interpreted the Supreme Court's mandate to provide that a prima facie case of discrimination in termination is established where
 
 
 8
 the plaintiff proves by a preponderance of the evidence that he or she is a member of a protected class, was qualified for the position held, and was discharged and replaced by a person outside of the protected class or was discharged while a person outside of the class with equal or lesser qualifications was retained.
 
 
 9
 Lee v. Russell County Board of Education, 684 F.2d 769, 773 (11th Cir.1982). A similar burden has been imposed on plaintiffs seeking to establish a prima facie case of discrimination in promotion[7] and retaliatory discharge.[8]
 
 
 10
 Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer "to articulate some legitimate, non-discriminatory reason" for the alleged discriminatory action. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer fails to meet this burden, the prima facie case of the plaintiff stands unrebutted, and judgment must be entered for the plaintiff as a matter of law. Burdine, 450 U.S. at 254, 101 S.Ct. at 1094.
 
 
 11
 It is important to bear in mind, however, that the defendant's burden of rebuttal is exceedingly light; "the defendant need not persuade the court that it was actually motivated by the proffered reasons ... it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. at 254-55, 101 S.Ct. at 1094. At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is "merely one of production, not proof." Lee, 684 F.2d at 773.
 
 
 12
 Once the defendant has rebutted the plaintiff's prima facie case, the plaintiff must carry his or her ultimate burden of establishing by a preponderance of the evidence that a discriminatory intent motivated the employer's action. McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825. The plaintiff may accomplish this indirectly by showing that the employer's proffered explanation is pretextual, or directly by showing that a discriminatory reason more likely motivated the employer's action. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. If the plaintiff succeeds in this showing, a presumption is created that the adverse employment action was the product of discriminatory intent; this presumption may only be rebutted by a showing by the employer that the adverse action would have been taken even in the absence of discriminatory intent. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).
 
 
 13
 The Supreme Court has noted that the McDonnell Douglas method of analysis is not necessarily applicable to every allegation of employment discrimination based on circumstantial evidence; the Court has urged trial and appellate courts to maintain a flexible approach in the face of varying factual circumstances. McDonnell Douglas, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; Furnco Construction Corp. v. Waters, 438 U.S. 567, 575-76, 98 S.Ct. 2943, 2948, 57 L.Ed.2d 957 (1978). However, in the absence of any indication by the district court that the posture of the present case merits a departure from the explicit McDonnell Douglas guidelines, we must assume that the district court intended to apply those guidelines in its determination that the named plaintiffs had proven individual cases of disparate treatment.
 
 
 14
 Of course, some plaintiffs are able to prove the existence of discriminatory intent by direct evidence; in these rare cases, the plaintiff is not required to rely on the inference of discrimination created by the prima facie case of McDonnell Douglas. Ramirez v. Sloss, 615 F.2d 163, 169 (5th Cir.1980). If the factfinder believes the direct evidence presented by the plaintiff, a presumption is created that the adverse employment action taken against the plaintiff was a product of that discriminatory intent. Lee, 684 F.2d at 774. At this point, just as with a successful showing by the plaintiff of discriminatory intent based on circumstantial evidence, the burden shifts to the defendant to prove by a preponderance of the evidence that the adverse action would have been taken even in the absence of a discriminatory motive. Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576.
 
 
 15
 In an action brought by individual plaintiffs alleging discrimination in various facets of the employment process, e.g. hiring, promotion, and termination, each plaintiff bears the burden of proving that each employment decision that adversely affected him or her was the product of a discriminatory motive. This is not to say, of course, that several plaintiffs may not rely on identical evidence to prove this motive or that a single plaintiff may not present similar evidence to prove discrimination in various employment decisions adversely affecting him or her. We mean only to state the obvious fact that each plaintiff bears the burden of proving each of his or her individual causes of action, whether by direct evidence or by circumstantial evidence via the McDonnell Douglas analysis.
 
 
 16
 However, the neat pattern of shifting inferences provided by McDonnell Douglas is not directly applicable to class actions. Though courts frequently discuss the necessity of a class making out a prima facie case of discrimination, great uncertainty exists as to the precise elements of this prima facie case.[9] This confusion is compounded when a class seeks to establish its case with circumstantial evidence.[10] Therefore, most courts have, in effect, avoided any type of structural analysis and simply considered the evidence as a whole to determine whether the plaintiff class has established "by a preponderance of the evidence that ... discrimination was the company's standard operating procedure--the regular rather than the unusual practice." Teamsters, 431 U.S. at 336, 97 S.Ct. at 1855.
 
 
 17
 In most class actions alleging employment discrimination, a vital part of the plaintiffs' case is evidence that individual class members, particularly the named plaintiffs, were illegally discriminated against in various facets of the employment process; likewise, the district court in the present case devoted a large part of its opinion to a discussion of instances of discrimination impacting on one or more of the named plaintiffs. Therefore, in the absence of compelling independent evidence of a pattern or practice of discrimination, this Court must assume that the district court's determination that the named plaintiffs were the victims of individual acts of discrimination provided substantial, and perhaps determinative, support for the lower court's finding of a pattern or practice of discrimination. Where, as here, the findings of individual acts of discrimination were based on an erroneous application of the McDonnell Douglas analysis, the finding of a pattern or practice is undercut; since we are unable to hold that a reasonable factfinder could not find in favor of the defendant, Johnson Products, we are compelled to remand.[11]
 
 D. The Defendant's Proof at Trial
 
 18
 The district court opinion and the record on appeal present substantial direct and circumstantial evidence of illegal sexual discrimination;[12] certainly, if the plaintiffs' evidence stood unchallenged, the district court might well have found that a prima facie case had been established as to the named plaintiffs and the class, and judgment could properly have been entered in their favor.
 
 
 19
 However, as the evidence cited below indicates, Johnson Products presented a vigorous defense which created an issue of fact as to most, if not all, of the allegations of discrimination presented by the plaintiffs. There can be no question but that the defendant met its minimal burden of articulating non-discriminatory reasons for its actions.
 
 
 20
 Although the defendant conceded that the final decisions on hiring, promotion, and termination in the sales division were made solely by John Johnson, the Vice President of Sales, until his death in 1975, it urged that his decisions were based on objective factors such as prior experience, education, and job performance. The defendant asserted that the plaintiffs' statistical evidence, presented by a Dr. John Fluker, was particularly useless for its failure to consider these factors as they related to individual members of the pool for hiring and promotion.
 
 
 21
 The defendant also cited historical factors as justification for the notable absence of women in supervisory positions in its sales division until after the filing of this action. The defendant noted that since very few women worked as salespersons until the 1960's, it was natural for men to have an edge in experience and an advantage in promotions. The company argued that very few women applied for sales jobs up to the 1960's given the long periods away from home and the obvious difficulties facing a black person traveling in the South (the region focused on by the plaintiff class) during the company's earlier years.
 
 
 22
 Additional evidence presented by the defendant sought to refute the individual allegations of the named plaintiffs. Johnson Products urged that Smith was not hired due to her lack of experience (an affidavit of John Johnson was introduced to that effect) and noted that the position applied for by Smith was filled by a transfer from Baltimore. The defendant urged that promotion decisions adversely affecting plaintiffs Perryman and Jackson were reached only after a careful comparison of the experience and performance of prospective managers; the defendant cited individual examples where promoted males had more work experience than Jackson and Perryman.
 
 
 23
 The defendant introduced psychological studies conducted of Jackson and Perryman shortly after the commencement of their employment with the company. The studies were conducted by Dr. John Mendheim, a licensed psychologist. Johnson Products urged that the results of these studies fully justified its decisions not to promote Perryman and Jackson. The defendant also suggested that the problems identified by these studies were evident in these plaintiffs' work performance and were a contributing cause to their terminations.[13]
 
 
 24
 The defendant also presented evidence challenging the alleged retaliatory motive behind the terminations of Perryman and another female sales representative, Rolena Porter. The termination letter to Perryman, dated July 1, 1974, noted that her discharge was based on her expressed desire to terminate her sales career and move into a position as a beauty critic; the termination letter expressed the company's belief that this lack of enthusiasm for her work was hampering her effectiveness.
 
 
 25
 Rolena Porter's termination letter of June 5, 1975, specified a number of reasons for her termination including excessive absenteeism and failure to cover her assigned territory. Samuel Haynes, a former district manager of Johnson Products who testified for the plaintiffs, refused to state on cross-examination that any of the reasons given were untrue; he did label some of the stated reasons "technicalities."
 
 E. Conclusion
 
 26
 In light of this evidence presented by the defendant, the district court's conclusion that "the defendant has not articulated any legitimate, non-discriminatory reason for his actions" is clearly erroneous. The defendant has certainly met the minimal burden of articulation set forth by the Supreme Court in Burdine. In these circumstances, the burden should be placed on the plaintiffs either to prove that these articulated reasons were a mere pretext or to show by direct evidence that the employer was motivated by discriminatory intent. There is no showing that the plaintiffs were required to carry this burden in the present case.[14]
 
 
 27
 This Court's opinion should not be construed as foreclosing a finding by the district court that sufficient direct evidence exists to support the individual and class allegations. However, if the court below reaches this conclusion, it must specify the evidence relied on for its finding as to each named plaintiff and the class as a whole or particular subclasses. If the court finds that individual allegations of discrimination are incapable of proof by direct evidence, then, in order to find that specific individuals were discriminated against, it must rely on the three-step test of McDonnell Douglas absent some justification for a departure from that analysis. If the named plaintiffs are able to prove by either direct or circumstantial evidence that any of the various adverse actions taken against them were the product of discriminatory intent, then the district court may properly rely on those showings as evidence of a pattern or practice of discrimination. In any case, if the court wishes to grant individual relief to the named plaintiffs, it must make the additional finding that the defendant failed to show by a preponderance of the evidence that the adverse employment actions would have been taken even in the absence of a discriminatory motive.
 
 
 28
 Finally, the district court should bear in mind that the failure of the named plaintiffs to prove that they were victims of individual instances of discrimination does not necessarily prevent the court from finding the existence of a pattern or practice of discrimination as to the class. Thurston v. Dekle, 531 F.2d 1264, 1271 (5th Cir.1976), vacated on other grounds, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1977); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (5th Cir.1969); Jenkins v. United Gas Corp., 400 F.2d 28, 31-32 (5th Cir.1968). The drafters of Title VII envisioned that statute as a protective measure for certain minority classes; once a class representative has satisfied the threshold representation requirements of Rule 23 of the Federal Rules of Civil Procedure,[15]
 
 
 29
 ... the judicial machinery has been set in train, [and] the proceeding takes on a public character in which remedies are devised to vindicate the policies of the [1964 Civil Rights] Act, not merely to afford private relief to the [named] employee.
 
 
 30
 Hutchings v. United States Industries, Inc., 428 F.2d 303, 311 (5th Cir.1970).
 
 II. THE MOORE LETTER
 
 31
 At trial, the defendant attempted to introduce into evidence a March 8, 1975, letter from Ed Moore, defendant's district sales manager, to one of the defendant's attorneys; in that letter, Moore denied ever having told plaintiff Smith that past female sales representatives were "rotten eggs" and stated that Smith had not been hired because of her lack of qualifications. The court refused to admit the letter since the defendant had not laid a proper foundation. There was some dispute at trial as to whether Moore was alive,[16] but his physical status is not relevant to our disposition of this issue.
 
 
 32
 The defendant argues that this letter should have been admitted pursuant to Fed.R.Evid. 804(b)(5), 28 U.S.C.A.,[17] a catchall exception to the hearsay rule which allows the introduction of out-of-court statements by an unavailable person when those statements possess certain qualities (such as trustworthiness and materiality) generally required of admissible hearsay evidence. The defendant directs this Court's attention to Copperweld Steel Co. v. Demag-Mannesman-Bohler, 578 F.2d 953, 963-64 (3rd Cir.1978), where the court upheld the admission under Rule 804(b)(5) of a memorandum prepared by an attorney summarizing his conversation with a key witness who died prior to trial. In that case, however, the parties agreed that the deceased witness had edited the memorandum and that handwritten notes on the memorandum had been inscribed by the witness. In these circumstances, the court ruled that the document had "equivalent circumstantial guarantees of trustworthiness" as other items admissible under hearsay exceptions.
 
 
 33
 In the present case, however, there are no assurances that Moore in fact wrote or authorized the disputed letter. The defendant did not even attempt to establish the letter's authenticity by, for example, introducing a handwriting expert to verify Moore's signature or a secretary to testify as to the production of the letter. Without these guarantees of trustworthiness, we must uphold the district court's action, especially in light of the broad discretion granted the trial court under Rule 804(b)(5) and its sister provision, Fed.R.Evid. 803(24), 28 U.S.C.A. Robinson v. Shapiro, 646 F.2d 734, 743 (2d Cir.1981); Huff v. White Motor Corp., 609 F.2d 286, 291 (7th Cir.1979); Weinstein's Evidence, p 803(24) at 803-290.
 
 III. RECERTIFICATION OF THE CLASS
 
 34
 On June 6, 1980, almost one year prior to the commencement of the trial in this case, the district court certified a class of:
 
 
 35
 All females who applied for employment with, or were employed by, the defendant in a non-production capacity after January 31, 1974.
 
 
 36
 On December 23, 1981, following a post-trial briefing, the court, over the defendant's objection, recertified the class to include only a portion of the original class:
 
 
 37
 [A]ll females who applied for employment with, or were employed by, the defendant as sales representatives in the retail and professional sales divisions of Johnson Products Company, Inc. after January 31, 1974.
 
 
 38
 Johnson Products alleges that the presentation of its defense was severely prejudiced by the class recertification. The defendant urges that its proof focused on its entire non-production workforce, i.e., all employees not engaged in the production of the defendant's products, and that it was never given an adequate opportunity to prepare and defend against the recertified class.
 
 
 39
 Fed.R.Civ.P. 23(c)(1), 28 U.S.C.A.,[18] grants the trial court great discretion in the initial certification and subsequent amendment of a class. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1123 (5th Cir.1969); Shumate & Co., Inc. v. National Association of Securities Dealers, 509 F.2d 147, 155 (5th Cir.1975). The trial court has an ongoing responsibility to assess the adequacy of class representation. Payne v. Travenol Laboratories, Inc., 673 F.2d 798, 811 (5th Cir.1982). The defendant has failed to cite any case in which a trial court was held to have abused its discretion by reducing the size of a class prior to a decision on the merits where all members of the recertified class were also members of the original class. The prejudice, if any, suffered by Johnson Products as a result of the recertification of the plaintiff class was not severe enough to compel our interference with the trial court's duty to facilitate the fair and expeditious utilization of the class action mechanism.
 
 IV. OTHER ISSUES
 
 40
 The defendant raises several additional issues on this appeal. However, since the trial court may in its discretion elect to hear additional evidence on remand, it would be premature for us to comment on these issues at this time.
 
 
 41
 VACATED and REMANDED.
 
 
 
 [1]
 Specifically, the plaintiffs in the present case allege a violation of 42 U.S.C.A. Sec. 2000e-2(a) which provides:
 (a) It shall be an unlawful employment practice for an employer--
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
 
 
 [2]
 Under 42 U.S.C.A. Secs. 2000e-6(a) and 2000e-6(c), the Equal Employment Opportunity Commission is entitled to bring an action against any person believed to be "engaged in a pattern or practice" of illegal discrimination. Since the Supreme Court's explanation of this term in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), federal courts have generally required that a plaintiff class establish the existence of such a pattern or practice before a defendant will be held to have discriminated against the class
 
 
 [3]
 Following the presentation of the evidence, the district court recertified the class to include:
 [A]ll females who have applied for employment with, or were employed by, the defendant as sales representatives in the professional and retail sales divisions of Johnson Products Company, Inc., after January 31, 1974.
 For further discussion of the class recertification, see Part III, infra.
 
 
 [4]
 In a "disparate treatment" case, the plaintiff alleges that "the employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." Teamsters, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15. Proof of discriminatory motive is a necessary element of a disparate treatment case
 Disparate treatment claims must be distinguished from "disparate impact" claims; "[t]he latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Id. No showing of discriminatory motive is necessary in a disparate impact case.
 In the case before us, the district court properly concluded that the plaintiffs had only presented evidence in support of a disparate treatment cause of action. There is no showing of a facially neutral employment practice that operated to the detriment of the plaintiff class.
 
 
 [5]
 On March 26, 1982, the district court entered a remedial order requiring: (1) that the defendant give notice to each class member and submit to individual damage hearings, (2) that the defendant reinstate plaintiffs Perryman and Reddick, and (3) that the defendant establish objective standards for hiring, promotion, and termination decisions in its sales division. We also vacate and remand this order pending further consideration of the liability issue by the district court
 
 
 [6]
 The Court wrote that a plaintiff may establish a prima facie case of hiring discrimination by proving (1) that he or she belongs to a protected minority, (2) that he or she applied for and was qualified for a job for which the employer was seeking applicants, (3) that, despite these qualifications, he or she was rejected, and (4) that, after the rejection, the employer continued to seek applications from persons with similar qualifications. 411 U.S. at 802, 93 S.Ct. at 1824
 
 
 [7]
 A plaintiff may establish a prima facie case of promotion discrimination by proving that he or she is a member of a protected minority, was qualified for and applied for the promotion, was rejected despite these qualifications, and that other employees with equal or lesser qualifications who were not members of the protected minority were promoted. Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir.1980); Bundy v. Jackson, 641 F.2d 934, 951 (C.A.D.C.1981)
 
 
 [8]
 A plaintiff may establish a prima facie case of retaliatory discharge by proving that he or she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding, was disadvantaged by an action of the employer simultaneously with or subsequent to such opposition or participation, and that there is a causal connection between the protected activity and the adverse employment action. Whatley v. Metropolitan Atlanta Rapid Transit Authority, 632 F.2d 1325, 1328 (5th Cir.1980); Burrus v. United Telephone Co. of Kansas, 683 F.2d 339, 343 (10th Cir.1982)
 
 
 [9]
 See generally, Mendez, Presumptions of Discriminatory Motive in Title VII Disparate Treatment Cases, 32 Stan.L.Rev. 1129 (1980); Belton, Burdens of Pleading and Proof in Discrimination Cases: Toward a Theory of Procedural Justice, 34 Vand.L.Rev. 1205 (1981)
 
 
 [10]
 We note especially the numerous recent cases and law review articles discussing the role of statistical evidence in the showing of a prima facie case of class discrimination. See Hazelwood School District v. United States, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); Wilkins v. University of Houston, 654 F.2d 388 (5th Cir.1981); Valentino v. United States Postal Service, 674 F.2d 56 (C.A.D.C.1982); Braun, Statistics and the Law: Hypothesis Testing and Its Application in Title VII Cases, 32 Hastings L.J. 59 (1980)
 
 
 [11]
 "When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the necessary findings.... Likewise, where findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issues." (Citation omitted). Pullman Standard v. Swint, 456 U.S. ----, ----, 102 S.Ct. 1781, 1791-2, 72 L.Ed.2d 66 (1982)
 
 
 [12]
 For example, Miss Smith, one of the named plaintiffs, testified that Ed Moore, a district sales manager for Johnson Products, told her during a job interview for a sales position that women sales representatives had been "rotten eggs" and that the company sought a man for the available position. Sam Haynes, a former Johnson Products employee who testified for the plaintiffs, stated that his superior had ordered him to find a "strong man" for one or two particular job openings. In addition to further direct and circumstantial evidence, the plaintiffs also introduced statistical evidence of discrimination in hiring and promotion
 
 
 [13]
 Dr. Mendheim criticized Jackson on several grounds, especially noting her "lack of maturity and questionable motivation;" Dr. Mendheim labeled Jackson "frivolous and carefree" and expressed his personal doubt that she would last more than one year at Johnson Products
 In his study of Perryman, Dr. Mendheim concluded that she was "very immature ... not well organized ... a questionable employee." Dr. Mendheim also noted Perryman's intense dislike of Caucasians and Jews, specifically quoting her comment, "It is a shame that not all the Jews were rubbed out by Hitler."
 
 
 [14]
 At the time of the district court opinion, our Court had not decided Lee. There we held: "Where a case of discrimination is made out by direct evidence, reliance on the [McDonnell Douglas ] test developed for circumstantial evidence is obviously unnecessary." (Citations omitted). 684 F.2d at 774
 The district court's opinion would lead us to believe that the court relied on the McDonnell Douglas test. On the other hand, it may have been relying on direct evidence and thus be within the doctrine formulated in Lee, supra. We are required to reverse because of our uncertainty as to the test applied by the district court.
 
 
 [15]
 Fed.R.Civ.P. 23, 28 U.S.C.A. provides in relevant part:
 (a) Prerequisites to a Class Action: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly protect the interests of the class.
 (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the finding include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
 It is not alleged that the named plaintiffs did not adequately represent the interests of the plaintiff class.
 
 
 [16]
 The parties agree that Moore is alive at the present time
 
 
 [17]
 Rule 804(b)(5) provides in pertinent part:
 (b) Hearsay Exceptions.--The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 * * *
 (5) Other Exceptions.--A statement not specifically covered by any [other hearsay exception] but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
 
 
 [18]
 Rule 23(c)(1) provides:
 As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.