**Pauline Mixon TYE, Plaintiff,**

v.

**HOUSTON COUNTY BOARD OF EDUCATION, et al., Defendants.**

**Civ. A. No. 87–T–141–S.**

United States District Court, M.D. Alabama, S.D.

Sept. 21, 1987.

Theron Stokes, Kenneth L. Thomas, Massey, Means & Thomas, Terry G. Davis, Seay & Davis, Montgomery, Ala., for plaintiff.

William P. Cobb, David R. Boyd, Balch & Bingham, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Pauline Mixon Tye, an assistant principal in the Houston County, Alabama school system, brought this lawsuit on February 19, 1987, charging that officials of the school system have repeatedly refused to promote her to various administrative

positions because of her sex. She has sued as defendants the school system's board of education and its present board members and superintendent. She bases her lawsuit on the fourteenth amendment to the U.S. Constitution, as enforced by 42 U.S.C.A. § 1983, and on 42 U.S.C.A. §§ 2000e through 2000e–17, popularly known as Title VII of the Civil Rights Act of 1964, as amended. The court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. §§ 1331, 1343 and 42 U.S.C.A. § 2000e–5(f)(3).

Based on the evidence presented at a nonjury trial, the court finds that Tye has been a victim of sex discrimination and is thus entitled to appropriate declaratory and injunctive relief from the defendants.

## I.

In 1965, Tye was hired as a teacher in the Houston County School System and, a year later, was appointed principal of Madrid Junior High School. Madrid was closed in 1968, however, and Tye was transferred to Rehobeth High School as a teacher. Since 1968, she has taught at various schools in the school system.

Over the years, Tye has continuously and unsuccessfully sought an administrative position in the school system. In 1968, when she was transferred to Rehobeth High School, the principalship at the school was vacant. She asked for the position but it was given to a man who had had no prior administrative experience and was less qualified than she. The superintendent of the school system told Tye that a woman could not handle the responsibilities, such as sports and cleaning, that went along with a high school principalship.

In 1970, Tye was indicted and tried for, but found not guilty of, murdering her husband. The jury apparently found that she shot her husband while trying to protect her son; her husband was her son's stepfather. In the years that followed, Tye continued to ask for administrative positions. The principal reason given by school officials for rejecting her was that the children, their parents, and other teachers would not accept her as an administrator because of the 1970 incident. School officials pointed out that Tye's trial received wide and intense publicity in the area and that after the trial Tye had to be transferred from Rehobeth High School to another school because a number of parents from the Rehobeth community publicly objected to her returning to the school. Rehobeth was near the community where Tye and her husband had lived.

Tye initially accepted the 1970 incident as a reason for not offering her administrative positions. But with time and as other administrative positions became available, she began to believe the reason less viable. She therefore filed a charge of sex discrimination with the Equal Employment Opportunity Commission in 1985. The Commission found that there was probable cause to believe that she had been a victim of sex discrimination, and the Commission issued her a "right-to-sue" letter under Title VII. Tye then timely filed this lawsuit under Title VII and § 1983.

In July 1986, about a half year before she filed this lawsuit, Tye was appointed assistant principal at an elementary school.

## II.

Tye claims that she has been a victim of intentional sex discrimination, in violation of Title VII and § 1983. Tye and the defendants agree that, in assessing her claims under both Title VII and § 1983, the court should follow the procedure outlined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See also Jordan v. Wilson,* 649 F.Supp. 1038, 1054 (M.D.Ala.1986). An employee has the initial burden of establishing a prima facie case of unlawful intentional discrimination by a preponderance of evidence, which once established raises a presumption that the employer discriminated against the employee in employment. If the employee establishes a prima facie case, the burden then shifts to the employer to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the employer discriminated against the employee. This may be done by the em-

ployer articulating a legitimate, nondiscriminatory reason for the employment decision, a reason which is clear and reasonably specific and worthy of credence. The employer has a burden of production, not one of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced.

Once the employer satisfies this burden of production, the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for intentional discrimination. The employee may satisfy this burden by persuading the court either directly that a discriminatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief. By so persuading the court, the employee satisfies her ultimate burden of demonstrating by a preponderance of evidence that she has been the victim of unlawful intentional discrimination.

■ An employee may establish a prima facie case of promotion discrimination by proving that she is a member of a protected group, was qualified for and applied for the promotion, was rejected in spite of these qualifications, and that other employees with equal or lesser qualifications who were not members of the protected group were promoted. *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1143 n. 7 (11th Cir.1983).[1]

The parties agree that Tye is barred by Alabama's statutes of limitations from seeking relief for any administrative position denied her prior to six years before this lawsuit was filed. 1975 Ala.Code § 6-2-34(1). *See Jones v. Preuit & Mauldin,* 763 F.2d 1250, 1256 (11th Cir.1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 296 (1986); *Jordan v. Wilson,* 649 F.Supp. at 1046. The parties also agree, however, that events that occurred outside the statutory limitations period may nonetheless still be appropriate for consideration. Evidence of prior acts may constitute relevant background evidence in determining whether a present violation exists. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Jordan v. Wilson,* 649 F.Supp. at 1046.

### A.

■ The court is convinced that Tye was denied the following administrative positions because of her sex:

| School | Position | Year |
| --- | --- | --- |
| 1. Webb Junior High School | Principal | 1981 |
| 2. Rehobeth High School | Assistant Principal | 1981 |
| 3. Houston County High School | Assistant Principal | 1982 |
| 4. Houston County High School | Principal | 1982 |
| 5. Cottonwood High School | Principal | 1982 |
| 6. Cottonwood High School | Assistant Principal | 1982 |
| 7. Wicksburg High School | Assistant Principal | 1982 |
| 8. Ashford High School | Principal | 1983 |

---

**1.** Requiring that a plaintiff establish as a part of her prima facie case that she is equally or better qualified than the person selected has been criticized by two commentators:

While a plaintiff bears the ultimate burden of demonstrating relatively better qualifications in order to prevail, plaintiffs need only show that they are "qualified" for the position to establish a prima facie case. Consideration of relative qualifications is more appropriately analyzed as part of the defendant's response to the prima facie case and as part of the plaintiff's efforts to prove pretext....

Schlei and Grossman, Employment Discrimination Law, 2nd Ed., p. 1298 n. 32. In any event, the outcome here would be the same even if Tye did not bear this requirement as a part of her prima facie case. To the extent the school officials contend, in those instances where this court has found Tye to be a victim of discrimination, that the men selected were better qualified, Tye has firmly established, as demonstrated later, that this contention is a pretext for sex discrimination. And in those instances where the court has found that Tye was not a victim of discrimination, the court would still be so convinced even if Tye had to address her relative qualifications, not as a part her prima facie case, but as a part of her efforts to prove pretext.

| | School | Position | Year |
|---|---|---|---|
| 9. | Ashford High School | Assistant Principal | 1983 |
| 10. | Ashford Elementary School | Principal | 1983 |
| 11. | Ashford Elementary School | Assistant Principal | 1983 |
| 12. | Rehobeth High School | Principal | 1985 |
| 13. | Harmon Elementary School | Principal | 1985 |

---

In each instance, Tye has established a prima facie case of sex discrimination.[2] She is a woman and therefore a member of a protected group; she was qualified and applied for each position; she was rejected despite her qualifications; and a male with lesser qualifications was selected.[3]

The defendants do question whether Tye applied for these positions. The court rejects their contention that she did not. First of all, prior to 1983, a person was not required to apply for an administrative position; a person was instead generally "tapped" by the superintendent based on his assessment of the qualifications of all eligible persons in the system. Admittedly, in 1983, the school system adopted a formal policy of advertising positions and requiring that interested persons, even with general applications already on file, make specific applications for a position. The defendants contend that, in 1983, although Tye had a general application on file, she never made a specific application for any of the advertised positions, as required by the newly adopted policy. The court is convinced that, while the policy was formally adopted, the school system never fully and fairly implemented it. First, the advertisements were never placed in places where they would reach everyone in the school system, and, as a result, Tye and others never learned about available positions.

Second, the advertisements were so ambiguous as to amount to no notice at all for some positions. For example, a 1983 advertisement expressly stated as available "1—High School Principal," and yet school officials say they considered it as giving notice of four positions: an elementary school principalship, an elementary school assistant principalship, and two high school principalships. The court simply cannot credit the defendants' contention that the 1983 notice was ever intended to give notice of all these positions; instead, the court believes that school officials never took seriously the school system's formal notice policy, and thus only half-heartedly applied it.

Further, the 1983 notice did not make clear that persons with general applications already on file must still submit a letter indicating a specific interest in the advertised position; the notice simply stated that applicants already employed in the school system must submit such a letter. The court is convinced that the system never really had a policy, or a practice, requiring that those with general applications on file also submit letters indicating specific interest in an advertised position. Admittedly, the superintendent testified that all those who were considered in 1983 submitted such letters; but he provided no documen-

2. During the heat of trial, counsel for Tye suggested that she was also contending that in 1982 school officials denied her a 'supervisor' position because of her sex. This contention appears to have been an after-thought by Tye's counsel in the midst of trial; from the pretrial pleadings and briefs it is evident that Tye's exclusive concerns are for the 13 principalships and assistant principalships listed above. The court does not understand Tye to be seriously interested in the 1982 supervisor position, and the court has therefore not addressed the issue of whether she was denied this position because of her sex. If Tye still wishes that the court address this matter, she should so inform the court within seven days from the date of this memorandum opinion.

3. The court addresses in detail Tye's relative qualifications as a part of its discussion of her efforts to prove pretext. See note 1, supra. As demonstrated later, she was much better qualified than the men selected.

tary evidence to support this testimony, and the court simply does not believe it.

But perhaps most significantly, there were instances where school officials failed to follow the notice policy altogether. In 1985, a principalship and an assistant principalship were filled without any advertisement or notice whatsoever.

With this evidence, the court must conclude that having a general or specific application on file has never actually been a requirement for an administrative position in the Houston County School System. Nevertheless, since 1980 school officials have had on file from Tye a formal application and a number of letters seeking any administrative position that might be available. Moreover, Tye has continually made known through her conversations with the then superintendents and other school officials that she wanted an administrative position. If anything, therefore, Tye did much more than was required of her. The defendants' contention that she did not apply for an administrative position is disingenuous.

■ Since Tye has established a prima facie case, the burden shifts to the defendants to articulate a sufficient reason for not appointing her to the 13 administrative positions that became available between 1981 and 1985; the defendants have met their burden. The defendants contend primarily that Tye was not appointed to these positions because she had an 'image problem' resulting from the 1970 incident involving the death of her husband. Tye has clearly established, however, that this reason is simply a pretext for the defendants having in truth discriminated against her because of her sex.

First of all, since at least the late 1960's the standard operating procedure of the Houston County School System has been to discriminate against female teachers and to give positions of substantial authority to men only. Tye herself was a direct victim of this discrimination in her early years. To be sure, in 1968 Tye was given the principalship of Madrid Junior High School, but this school was very small, with less than a hundred students and very few teachers. When Madrid was closed, a principalship became available at Rehobeth High School, which had one or two thousand students. The then superintendent admitted at trial that Tye should logically have received the Rehobeth principalship because she was more qualified than the man who actually received the position and because she had just been relieved of her own principalship. The superintendent told her, however, that she could not have the position because a woman could not handle the responsibilities of a high school. Of course, the principalship became available before the 1970 incident involving Tye's husband, and thus the incident could not have played a role in the denial of the position to her. The conclusion is inescapable that Tye was denied the Rehobeth principalship because of her sex.

The evidence also reflected instances where two other women were victims of the school system's policy of discrimination. In 1977, Phyllis Walsh, an outstanding teacher in the school system, asked the school system's superintendent about being appointed to an administrative position; the superintendent responded that handling discipline might be too much for a woman. Walsh resigned because she saw no opportunities for advancement for women in the school system.

Peggy Price, another outstanding teacher in the system, had similar experiences. She had shown exceptional administrative abilities by starting, almost on her own, a small school annex to relieve overcrowding at Rehobeth High School. Her abilities and achievements were, however, never acknowledged by school officials. For example, when it became necessary to choose a supervisor for her school, a man was selected because, as she was told by her principal, a man was needed to handle discipline. Not until several years later was Price finally made supervisor of the school she had started. This was not the end of Price's tribulations, however. Rehobeth was later able to expand its facilities, and it thus became possible to close Price's school and transfer her grades back to Rehobeth. Rehobeth could have only one assistant

principal, however, and the choice was between Price and a lackluster male teacher. True to its discriminatory policy, school officials selected the male teacher. Realizing, as did Walsh, that she had no future in the school system, Price left. She later became president of a local college.

The court is convinced by the above evidence that the school system had a policy of discriminating against women by awarding positions of substantial responsibilities to men only; the court is further convinced that, because of this policy, every decision of the Houston County School System regarding Tye's efforts to secure an administrative position was in some measure infected by sex discrimination. It is against this background that the court now assesses the defendants' reasons for not selecting Tye for various administrative positions.[4]

The court agrees with the defendants that, in the wake of the 1970 incident, it would not have been reasonable because of public opinion to have appointed Tye to an administrative position. The court is convinced that, while, pursuant to the school system's policy of sex discrimination, sex was a factor in denying administrative positions to Tye, it was not the determinative factor; in other words, even in the absence of the invidious policy, Tye would not have been appointed to an administrative position during the period immediately following her trial.

However, the court believes that by 1980 the 1970 incident was no longer a serious impediment to Tye's advancement, nor did school officials believe it to be, and that after 1980 Tye was repeatedly denied administrative positions solely because of her sex. The testimony of a number of witnesses convinces the court that by 1980 the incident had faded away and was no longer of major concern to parents and educators in Houston County. Moreover, some school officials were greatly inconsistent regarding whether the 1970 incident played a role in their decisions after 1980 not to promote Tye. While they did mention during the trial that the incident was their primary reason for not promoting Tye, in testimony taken before trial they did not. The court is convinced that the 1970 incident is but a pretext for the school officials' refusal since 1980 to promote Tye because of her sex.[5]

The defendants have also proffered another reason for not appointing Tye to an administrative position between 1980 and 1985: they claim that she had problems with teachers and administrators at some of the schools where she taught over the years. The court rejects this reason. First of all, these alleged problems were never documented. Without some documentation, the court doubts that there were in fact such problems or that the problems were as serious as the defendants claim. Second, even if Tye had some undocumented problems, the court does not believe that her deficiency in any way equaled the deficiencies in the men who were selected. For example, in 1982, a man was hired to be assistant principal at Wicksburg High School even though he lacked necessary state certification for the position; he was given a year after the appointment to obtain the certification. In another instance in 1982, a salesman was appointed to the assistant principalship at Houston County High School; while the salesman

---

4. In light of the court's finding of a policy, or pattern and practice, of sex discrimination by officials of the Houston County School System, it could be argued that the court should not follow the *Burdine* approach under which the plaintiff always bears the ultimate burden of establishing intentional discrimination, but rather the defendants should bear the burden of establishing by clear and convincing evidence that Tye has not been a victim of discrimination. *See Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1559 (11th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). The court need not resolve this issue because the outcome of this case would be the same regardless as to who has the burden of proof and what standard of evidence must be met.

5. There was also credible evidence that school officials held women to higher moral standards than men. One could infer from this evidence that a man situated similarly to Tye would not have had to suffer the stigma she did for as long as she did. The court, however, need not rely on this evidence because other evidence convinces the court, as stated, that by 1980 the 1970 incident was no longer a stigma for Tye.

had taught in the past, he had had no prior administrative experience and, of course, was not even a teacher at the time he was appointed.

And there were numerous other instances where men were appointed to assistant principalships with no prior administrative experience at all: the assistant principalship at Rehobeth High School in 1981; assistant principalship at Cottonwood High School in 1982; assistant principalship at Ashford High School in 1983; and assistant principalship at Ashford Elementary School in 1983. And there were other instances where the men appointed had had much less administrative experience than Tye in

that she had served as a principal in the past but they had not: the principalship at Webb Junior High School in 1981; principalship at Houston County High School in 1982; principalship at Cottonwood High School in 1982; principalship at Ashford High School in 1983; principalship at Ashford Elementary School in 1983; principalship at Rehobeth High School in 1985; and principalship at Harmon Elementary School in 1985.[6]

### B.

Tye contends that school officials also denied her the following administrative positions because she is a woman:

| School or Program | Position | Year |
|---|---|---|
| 1. Rehobeth High School | Acting Principal | 1985 |
| 2. Wicksburg High School | Principal | 1985 |
| 3. Career Incentive Program | Coordinator | 1985 |

The court is not convinced that she was denied these positions because of her sex.

■ First, Tye has failed to establish a prima facie case that she was denied the Wicksburg High School principalship and the Career Incentive Program position because of her sex. She has failed to meet the requirement that a man with equal or lesser qualifications received these positions. The man who was appointed principal of Wicksburg had a doctorate in education and had served a year as principal in another school system; he was more quali-

fied than Tye. The state superintendent had informed local school officials that the Career Incentive Program Coordinator should, where possible, come from outside the school system. The man who was appointed coordinator met this additional requirement; Tye did not.[7]

■ Tye has, however, established a prima facie case of sex discrimination as to the 'acting' principal position at Rehobeth High School. She was at least as qualified as the man who received the position; and the record is clear that all other require-

---

**6.** In the midst of trial, Tye added that she was denied the 1982 assistant principalship at Cottonwood High School and the 1985 principalship at Harmon Elementary School because of her race as well as her sex; these two positions went to black males. The evidence substantiates her claim. These two positions were apparently 'reserved' for blacks; and in view of the fact that Tye was more qualified than either of the two men who received the positions, the court is convinced that she was denied these positions both because she is white and because she is a female. Tye has established a prima facie case of both sex and race discrimination as to these two positions, and she has shown that the reasons given by the defendants for not appointing her to the positions were but a pretext for race and sex discrimination. However,

in view of the facts that throughout discovery and for most of the trial Tye rested this lawsuit on charges of sex discrimination alone and that she will not be entitled to any more substantive relief with this finding of race discrimination, the court has not accorded her any declaratory or injunctive relief based on its finding of race discrimination. Indeed, the court believes that Tye added the race discrimination charges as fall-back claims should the court fail to find in her favor on her sex discrimination charges. If the court is incorrect, then Tye should so inform the court within seven days from the date of this opinion.

**7.** *See* note 1, *supra.*

ments for a prima facie case are met. The school officials have, however, articulated a legitimate, nondiscriminatory reason for not giving the position to Tye. They state that the Rehobeth principal had suddenly become ill and someone was needed to fill the position immediately, and it was not certain at the time whether the principal would return. The school officials further state that the man who was appointed acting principal was assistant principal at the school and already familiar with school, and thus was the logical choice for the temporary assignment. Tye has failed to show that this reason proffered by the school officials is pretextual. The school officials did not deny Tye the position of acting principal at Rehobeth because of her sex.[8]

### III.

■ The court is therefore convinced that Tye was denied a number of principalships and assistant principalships because of her sex. As a victim of sex discrimination, Tye is entitled to appropriate relief. First, she is presumptively entitled to backpay and other benefits she would have received had she been appointed a principal in the past. The court will give the parties an opportunity to agree upon the appropriate amount of backpay and other benefits Tye should receive. If the parties cannot reach an agreement on this issue, then the court will itself determine, after an additional hearing, how much Tye should receive in backpay and other back benefits. Second, Tye is presumptively entitled to immediate instatement to a principalship, and more specifically to a high school principalship. Instatement at this time to any principalship in the school system would, however, require the displacement of an innocent person; the court therefore declines to order such. *Rivers v. Washington County Board of Education,* 770 F.2d 1010, 1012 (11th Cir.1985) (per curiam); *Carter v. Community Action Agency,* 625 F.Supp. 199, 206–07 (M.D.Ala.1985). The court will instead afford Tye the following relief.

The court will require the defendants to give Tye a right of first refusal to any high school principalship in the school system, with the right to expire only when Tye accepts or rejects a high school principalship; she shall also have a right of first refusal to any elementary school principalship, with this right to expire only when she accepts or rejects an elementary or high school principalship. It is the intent of the court that Tye have the opportunity to become a high school principal as soon as possible, but that she also be allowed to serve temporarily as an elementary school principal should the latter become available before the former. The court will also require that, beginning with the 1987–88 school year, the defendants are to pay Tye and give her all other employment benefits as if she were a principal. Again, if the parties cannot agree on how much Tye should receive, the court will resolve this matter after an appropriate hearing.

Furthermore, in light of evidence that school officials have engaged is a lengthy, sophisticated scheme to discriminate against Tye because of her sex, the court is compelled to enter a broad injunction prohibiting the defendants from sexually discriminating against her in the future. For, "where there is abundant evidence of consistent past discrimination injunctive relief is mandatory absent clear and convincing proof that there is no reasonable probability of further noncompliance with the law." *Lewis v. Smith,* 731 F.2d 1535, 1540 (11th Cir.1984). The court will also retain jurisdiction over this matter to assure that this prohibitory injunction is followed both in spirit and to the letter.

Finally, the court will require that the defendants pay Tye a reasonable attorney fee. 42 U.S.C.A. §§ 1988, 2000e–5(k).

### IV.

The court is compelled to make some additional comments. Section 1983 and Title VII evidence a national mandate for the

---

8. As previously stated, the court would have still reached these decisions as to the three positions discussed here even if the defendants bore the burden of establishing by clear and convincing evidence that Tye was not a victim of sex discrimination. *See* note 3, *supra.*

eradication of all impermissible forms of discrimination in the workforce. With these statutes—and in particular with Title VII—Congress recognized that victims of discrimination are not merely those who have been directly denied some employment opportunity because of their sex or race or whatever, but that the victim is society as a whole. This case dramatically teaches this lesson again. Because of its invidious policy of sex discrimination, the Houston County School System has forced from its ranks not only the best and brightest women, but by far the best and brightest educators of whatever sex. The victims here are therefore not only these talented women, but the many, many students who have been denied exposure to their talent.[9]

An appropriate judgment will be entered.

## JUDGMENT AND INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That judgment be and it is hereby entered in favor of plaintiff Pauline Mixon Tye and against the defendants Houston County Board of Education and its superintendent and members;

(2) That it is DECLARED that the defendants refused to promote plaintiff Tye to the following positions because of her sex: (i) principalship at Webb Junior High School in 1981; (ii) assistant principalship at Rehobeth High School in 1981; (iii) assistant principalship at Houston County High School in 1982; (iv) principalship at Houston County High School in 1982; (v) principalship at Cottonwood High School in 1982; (vi) assistant principalship at Cottonwood High School in 1982; (vii) assistant principalship at Wicksburg High School in 1982; (viii) principalship at Ashford High School in 1983; (ix) assistant principalship at Ashford High School in 1983; (x) principalship at Ashford Elementary School in 1983; (xi) assistant principalship at Ashford Elementary School in 1983; (xii) principalship at Rehobeth High School in 1985; and (xiii) principalship at Harmon Elementary School in 1985;

(3) That the defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this injunction by personal service or otherwise, be and they are hereby ENJOINED and RESTRAINED as follows:

(a) From discriminating against plaintiff Tye on account of her sex in her employment in the Houston County School System;

(b) From failing to offer plaintiff Tye the next available high school principalship in the Houston County School System, at a salary and with such employment benefits normally attendant to the position, as long as the salary and benefits are greater than the salary and benefits she is receiving just before the offer, and with the offer to expire when plaintiff Tye either accepts or rejects an offer of a promotion to a high school principalship;

(c) From failing to offer plaintiff Tye the next available elementary school principalship in the Houston County School System, with the offer to expire when plaintiff Tye either accepts or rejects an offer of a promotion to a high school principalship or accepts or rejects an offer of a promotion to an elementary school principalship; and

(d) From failing, beginning with the 1987–88 school year, to pay plaintiff Tye a salary as if she were principal of a high school, with the salary to include all such employment benefits normally attendant to the position and with the salary level to continue until such time as Tye rejects a promotion to a high school principalship;

(4) That plaintiff Tye be and she is hereby awarded from the defendants all backpay and other employment benefits she

---

**9.** After the trial, the defendants submitted some statistical data reflecting, among other things, that most of those holding administrative certification in the school system are men. These data are not surprising in light of the school system's policy of sex discrimination, which, according to trial testimony, has discouraged female teachers from pursuing such certification and has chased out of the school system those who do.

would have received had she been promoted as required by law;

(5) That all parties be and they are hereby allowed 14 days from the date of this order to file a request for the court to determine the appropriate amount of present pay, backpay and other employment benefits, both past and present, to which plaintiff Tye is entitled, should the parties be unable to agree to these matters;

(6) That plaintiff Tye be and she is hereby allowed 28 days from the date of this order to file a request for reasonable attorney fees; and

· (7) That all other relief sought by plaintiff Tye that is not specifically granted be and it is hereby denied.

It is further ORDERED that this court retains jurisdiction of this cause until further order.

It is further ORDERED that all costs of these proceedings be and they are hereby taxed against the defendants, for which execution may issue.

The clerk of the court is DIRECTED to issue a writ of injunction.