Patricia **PERRYMAN**, et al., Plaintiffs,

v.

**JOHNSON PRODUCTS COMPANY, INC.**, Defendant.

No. C75–1569A.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 22, 1983.

John W. Walker, Richard Quiggle, Little Rock, Ark., Wiley A. Branton, Washington, D.C., for plaintiffs.

Duane C. Quaini, Robert C. Johnson, Chicago, Ill., Sidney O. Smith, Jr., John R. Crenshaw, Anne S. Rampacek, Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

This action was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Plaintiffs alleged that the defendant, Johnson Products Co., Inc. (Johnson Products), discriminated against women in its hiring, promotion, and discharge policies and practices. Plaintiffs also contended that the defendant retaliated against women who engaged in activities protected under Title VII. Plaintiffs asserted individual and class-wide claims of discrimination. Following a non-jury trial in May, 1981, this court found that the employment policies and practices of the defendant regarding its refusal to hire women into sales positions and its denial of promotion opportunities on the same terms and conditions of employment as male employees were unlawful employment practices proscribed by Title VII. The court also found that the defendant had engaged in unlawful employment practices by retaliating against employees who filed charges of discrimination with the EEOC and engaged in other activities protected under Title VII. Order of this court, dated December 23, 1981. 532 F.Supp. 373.

On appeal, the Eleventh Circuit Court of Appeals vacated the order of this court and remanded the action. *Perryman v. Johnson Products Co.,* 698 F.2d 1138 (11th Cir. 1983) (*"Perryman"*). The Court of Appeals held that this court had not given proper weight to the evidence presented by the defendant employer as to legitimate, nondiscriminatory reasons for its action. *Perryman,* 698 F.2d at 1145. However, the Court of Appeals held that the re-certification of the class after trial to include only claims concerning employment in the defendant's sales organization was not an abuse of discretion by the district court. It also held that exclusion of a letter from an employee to the defendant's attorney was not an error.

■ The action is now before this court for reconsideration of its findings of fact and conclusions of law in accordance with the legal analysis set forth by the Eleventh Circuit in its *Perryman* opinion. In the December 23, 1981 order, this court found that the plaintiffs had proved a disparate treatment case. The Court of Appeals agreed that the plaintiffs' evidence only supported a disparate treatment cause of action. *Perryman,* 698 F.2d at 1141 n. 4. In disparate treatment cases proof of the defendant's discriminatory motive is required. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977) (*Teamsters*). Because a discriminatory motive is rarely capable of proof by direct evidence, the Supreme Court has developed an analytical framework which permits a discriminatory motive to be inferred from circumstantial evidence. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*), *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981) (*Burdine*). The framework established by the Supreme Court is a burden-shifting evidentiary test. Plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the plaintiff makes out a prima facie case of discrimination the

burden shifts to the defendant employer to "articulate some legitimate, non-discriminatory reason" for the alleged discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Defendant's burden of rebuttal is very light; it is only "one of production, not proof." *Lee v. Russell County Board of Education*, 684 F.2d 769, 773 (11th Cir.1982) (*Lee*). "The defendant need not persuade the court that it was actually motivated by the proffered reasons ... it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094. If the defendant fails to meet its burden, the plaintiff's prima facie case is unrebutted and judgment must be entered for the plaintiff. *Id.* at 254, 101 S.Ct. at 1094.

■ If the defendant rebuts the plaintiff's prima facie case, the plaintiff must "carry his or her ultimate burden of establishing by a preponderance of the evidence that a discriminatory intent motivated the employer's action." *Perryman*, 698 F.2d at 1142 (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825). Plaintiff may do this "indirectly by showing that the employer's proffered explanation is pretextual, or directly by showing that a discriminatory reason more likely motivated the employer's action." *Id.* (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). If the plaintiff carries this burden, defendant may rebut the resulting presumption of discrimination by showing that the adverse action would have been taken even in the absence of discriminatory intent. *Id.* (citing *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (*Mt. Healthy*)).

■ The Eleventh Circuit has held that where a discrimination case is proved by direct evidence, it is incorrect to rely on a *McDonnell Douglas* rebuttal. *Lee*, 684 F.2d at 774; *Perryman*, 698 F.2d at 1143. If the evidence is direct testimony that the defendant acted with a discriminatory mo-

tive, and the trier of fact credits the testimony, the discrimination claim is proved.

The defendant cannot refute this evidence by mere articulation of other reasons; the legal standard changes dramatically:

> Once an [illegal] motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by *proving* by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor.

*Bell v. Birmingham Linen Service*, 715 F.2d 1552 at 1557 (11th Cir.1983) (citing *Lee*, 684 F.2d at 774). Both of the above analyses are applicable in this action.

The courts have recognized that the burden-shifting evidentiary pattern of the *McDonnell Douglas* test is not directly applicable to class actions. *See, e.g., Perryman*, 698 F.2d at 1143. Because of the difficulties involved in making out a prima facie case of class-wide discrimination, especially if circumstantial evidence is relied upon, "most courts have, in effect, avoided any type of structural analysis...." *Id.* Instead, the courts have considered the totality of the evidence to determine whether the plaintiff class has established

> by a preponderance of the evidence that ... discrimination was the company's standard operating procedure—the regular rather than the unusual practice.

*Id.* (quoting *Teamsters*, 431 U.S. at 336, 97 S.Ct. at 1855). In the instant case, because the plaintiff class sought to establish its claims primarily with circumstantial evidence, the court finds it appropriate to follow the evidentiary analysis described in *Teamsters* and consider the class evidence as a whole rather than attempt to fit this evidence into the framework of the *McDonnell Douglas* test.

### Findings of Fact

The individual named plaintiffs are two former employees of the defendant, Patricia Perryman and Helen Reddick (nee Jackson), who complained that they received

discriminatory treatment while employed by the defendant, and Finesse Ward (nee Smith), who complained about her failure to be employed by the defendant because of the defendant's alleged discrimination against her because of her sex. All of the named plaintiffs complained as class representatives, about sex-based employment practices of the defendant. Their claims included failure to employ, failure to promote, discriminatory discharge, and discriminatory action taken against them by the defendant in retaliation for engaging in activities protected by Title VII, including filing charges of discrimination with the Equal Employment Opportunity Commission (EEOC).

Before analyzing the evidence on the plaintiffs' specific claims of hiring, promotion, and discharge discrimination, the court's findings of fact relating to the company organization and operations are presented. These general findings are relevant to each kind of discrimination alleged by the plaintiffs.

Plaintiff Patricia Perryman is a female residing in Atlanta, Georgia, who was employed by the defendant from July 1971 to July 1974. Plaintiff Helen Reddick is a female residing in Albany, Georgia, who was employed by the defendant from January 1973 to April 1975. Plaintiff Finesse Smith Ward is a female residing in Atlanta, Georgia, who sought employment with the defendant company in August 1974, but was not hired.

Defendant Johnson Products Company is a black-owned cosmetic manufacturer and distributor. Its principal offices, including the executive and national sales offices, are in Chicago, Illinois. The company does business in most, if not all, of the United States, and in many countries in Africa. Johnson Products has experienced phenomenal growth over the years and is presently listed on the American Stock Exchange.

Johnson Products has employed between 250 and 550 employees during each of the calendar years between 1974 and 1981. Most of the company's production is done in Chicago. The company's sales operation is divided into regions with administrative centers located in New York City, Atlanta, Chicago, and Los Angeles. Each region is divided into districts. Each region has a manager and each district has a manager. There are two sales entities within the sales operation of the defendant company: the retail sales division and the professional sales division. Retail sales are those made to department stores, drug stores, and the like, whereas professional sales are those made to beauticians and beauty shop operators. There has been, however, some overlapping of sales between the two divisions.

At all times relevant to this action, the defendant maintained a full-time sales force of 40 to 80 sales people in the two divisions. Johnson Products initially manufactured and sold only haircare products. In the early 1970's production was expanded and a line of cosmetics was introduced which was marketed and sold exclusively for use by women. The number of sales employees varied over time depending upon which products were being made and marketed and the sales emphasis placed on particular products. Before December 1976, the defendant had never employed a female in the position of vice president of national accounts, national sales director, director of professional sales, professional division field coordinator, regional manager, district manager, or any other high level supervisory positions within the sales organization of Johnson Products. After December 1976, its track record improved. According to information furnished to the court by the defendant on July 29, 1981, in the form of a table showing dates, job positions, sex, and name of incumbents (identified as Court's Exhibit X), this much can be verified:

In 1972, out of a total of 16 supervisory positions in the sales operation, only three were occupied by females: M. Morton was Training Manager, V. Glenn was National Sales Supervisor, and R. Lawson was Sales Administrator.

In 1973, out of 17 supervisory positions within the sales operation, the same three

positions were occupied by females with C. Myles replacing R. Lawson as Sales Administrator.

In 1974, there were 17 supervisory positions. Two of these positions, National Sales Supervisor and Sales Administrator, were filled by females.

In 1975, two of the 17 supervisory positions were occupied by females.

In 1976, out of the 17 positions, two were again filled by females.

In 1977, four of the 17 supervisory positions were occupied by females. For the first time the company had two female district sales managers.

In 1978, out of a total of 19 positions, four were held by females.

In 1979, five of the 19 positions were occupied by females.

In 1980 there were 26 supervisory positions within the sales organization. Ten of these positions were occupied by females and apparently the number remained the same in 1981.

Until sometime in 1977, the defendant did not employ a female in any direct sales management position. In 1977, two out of a total of eight district managers were female. The only female to hold any major position in the sales operation prior to 1977 was Velma Glenn, who was the National Sales Supervisor for the professional sales division. This division sold products directly to beauty shop operators who were mainly women. There were no other women in any direct sales supervisory positions.

Historically, the sales force of the company has been primarily male. Sometime in 1971, however, the company established a sale division staffed almost entirely by females known as cosmetic merchandisers. The cosmetic merchandisers were employed to present the company's new line of cosmetics directly to potential female customers in the market place. The duties of cosmetic merchandisers did not correspond to those of the sales representatives and these women were paid considerably less than males employed as sales representatives. The cosmetic merchandising pro-

gram was discontinued after six months and the position of cosmetic merchandiser was abolished. Some of the women employed as cosmetic merchandisers were offered positions as sales representatives in the company's sales organization. Although women were hired as sales representatives in both the retail and professional divisions, the plaintiffs alleged that discriminatory intent permeated the defendant's hiring, promotion, and termination practices from January 1974 to the time of trial.

The evidence at trial established that, for many years, John E. Johnson was the crucial decision-maker with regard to hiring, promotion, and termination decisions and practices in the defendant company. Johnson, brother of the company's president, was the vice-president in charge of sales. He was a virtual "one-man show," making all decisions with respect to the sales organization. He ultimately decided who would be hired, who would be fired, who would be disciplined, who would be promoted, and who would not be promoted. While there existed some written company policies concerning employee relations (Plaintiffs' Exhibit 17), the evidence is overwhelming and totally unrefuted that Johnson was the man who controlled everything in the sales organization. Qualifications for hiring and promotion were decided by Johnson on an ad hoc basis. While subjective factors inevitably play a role in personnel decisions, the evidence at trial established that Johnson largely, if not completely, excluded consideration of objective factors in favor of subjective factors when making the personnel decisions for the company's sales organization. These subjective determinations on his part operated to place women in a subordinate position to their male counterparts in the sales organization of Johnson Products Company. Women started at a lower pay scale than men in comparable positions, and thus, even with bonuses and merit increases women were unable to catch up to their male counterparts. The defendant company had no affirmative action plan during

the time period relevant to this action. It had no job posting system and no standard, formal method of providing notice of vacancies or promotion possibilities within the sales organization.

## I. Hiring Discrimination Claims

Plaintiffs presented individual and class claims of discrimination based on the defendant's failure to hire women for positions in its sales organization. In *McDonnell Douglas* the Supreme Court set forth the elements a plaintiff must show to establish a prima facie case of hiring discrimination:

> (1) that he or she belongs to a protected minority, (2) that he or she applied for and was qualified for a job for which the employer was seeking applicants, (3) that, despite these qualifications, he or she was rejected, and (4) that, after the rejection, the employer continued to seek applications from persons with similar qualifications.

411 U.S. at 802, 93 S.Ct. at 1824.

### A. Individual Claims

#### 1. Finesse Smith Ward

Plaintiff Ward applied for a position as a sales representative in Atlanta in August 1974, after reading a newspaper advertisement seeking "salesmen" for Johnson Products. During her interview, Mr. Ed Moore, a district sales manager for the company, told her that the company was looking for men to fill the sales representatives position because the women who had worked for Johnson Products in these positions in the past had been "a bunch of rotten eggs." Moore offered Ward a position demonstrating the company's products in beauty salons. The demonstrator salary was about half of that paid to sales representatives. Ward was not interested in the demonstrator position and turned it down. Ward's application for a sales representative position was returned to her stamped "rejected" without any explanation. Ward filed a charge with the EEOC complaining of discriminatory treatment on August 29, 1974.

Plaintiff Ward contends that she was rejected and was not hired by the company because of its discrimination against women. Ward had a background in sales, including hair care and beauty product sales. In addition, she had worked for the defendant on a part time basis in 1970 doing in-store promotions and sales of the defendant's products. Evidence at trial established that the company had no objective standard for the type or amount of sales experience required for applicants to be hired as sales representatives. Failure to establish fixed or reasonably objective standards for hiring is a discriminatory practice. *See Watson v. National Linen Service*, 686 F.2d 877 (11th Cir.1982) (citations omitted). Testimony disclosed that Johnson made all final hiring decisions and that subjective factors played an important role in his decisions. While Johnson may have required all sales representatives to have had some sales experience, the fact that several men were hired as sales representatives without any background in the beauty or health care product business proved that no specific type of sales experience was required. Ward's work experience in beauty sales was sufficient to establish her qualifications for the position. The sales representative position she applied for was ultimately filled by a man. Ward established a prima facie case of hiring discrimination under the criteria set forth in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. *See Perryman*, 698 F.2d at 1141 n. 6.

Defendant met its burden of rebutting the plaintiff's prima facie case by showing that it did not hire any new employee for the position Ward sought, including a male applicant for the position who had nine years of sales experience in an unspecified field. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The company instead transferred a male sales representative from Baltimore to fill the position in Atlanta.

Plaintiff Ward carried her ultimate burden of establishing by a preponderance

of the evidence that a discriminatory intent motivated the defendant's action. Ward established this discriminatory motive directly with Mr. Moore's statements that the company was looking for men because of its bad past experience with women, and that in light of this history the company would not take a chance on women in the position again. Ward showed that she was qualified for the position. She received no explanation of why the company rejected her application. Moore's statements are direct evidence that a discriminatory reason more likely than not motivated the company's action in rejecting her application. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Defendant failed to rebut the presumption of discriminatory intent created by the plaintiff's direct evidence of Moore's statements. The Atlanta position Ward sought was filled by the lateral transfer of a male employee already working for the defendant rather than by hiring a new employee. This showing does not meet the defendant's heavy burden of proving by a preponderance of the evidence that the adverse action against Ward would have been taken even in the absence of gender discrimination. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *Bell v. Birmingham Linen Service*, 715 F.2d at 1557 (11th Cir.1983).

B. Class Claims

Plaintiffs presented both direct and circumstantial evidence of discrimination by the defendant in initial hiring decisions and in the terms and conditions of employment of women who were hired.

Moore's statements to Ward are direct evidence of discriminatory intent in the company's hiring policy and practices. Mr. Haynes' testimony that John Johnson told him to try to find a "strong man" for a few particular sales positions is additional direct evidence of discriminatory intent on the part of the defendant.

The statistical evidence of the defendant's hiring history provides strong circumstantial evidence in support of the plaintiffs' class claims. As discussed above, the sales force of the company had been primarily male throughout the 1960's. When women were hired in significant numbers for the sales organization, beginning in 1971, most of them were hired as cosmetic merchandisers for a new separate, and segregated, sales division. Cosmetic merchandisers were paid less than the male sales representatives and they had fewer responsibilities and less demanding jobs. Evidence of discrimination in the terms and conditions of hiring appeared with respect to the cosmetic merchandisers who were hired as sales representatives when their former positions were eliminated. Defendant argued that the territory, customers, duties, and pay of these newly hired female sales representatives were determined on the same basis as their male counterparts in the retail sales division. Plaintiffs' evidence, however, casts considerable doubt upon this contention. Women hired for these positions were, without exception, hired at lower pay than their male counterparts hired at about the same time. Defendant responded to this prima facie showing of discrimination by arguing that the policy of the company was to hire all sales representatives at a base minimum salary level and to then increase the salary paid to those with prior sales experience. As a result, the starting salaries for sales representatives varied depending on their past experience. Defendant relied on the historical evidence that until the 1960's very few women had worked as salespersons to justify the difference in salaries paid to men and women. Because women traditionally had not worked in sales in significant numbers, it was natural to expect men to have the advantage with respect to sales experience and thus men would receive higher starting salaries under the defendant's system which increased salaries in recognition of sales experience. This justification, however, did not explain why the defendant created a sexually segregated personnel category of cosmetic merchandisers in 1971 or why Ward, who had sales experience and sought a job as a sales representative, was offered a position as a product demonstrator at a much lower salary.

Plaintiffs' evidence established that, except for sales experience of some type, there were no standard, objective hiring criteria for sales representatives. There was testimony that John Johnson, the ultimate decision maker for all hiring, considered applicants' sales experience and education among the important factors in hiring. Although there was evidence that the men generally may have had more years of sales experience, there was also testimony that much of their experience was not in the hair care or beauty product fields. For example, several of the males hired by the defendant had worked for the same insurance company before joining Johnson Products. Plaintiffs' evidence showed that several of the women hired at the lower salaries had sales experience in the beauty product market although their sales careers had been for shorter periods than the men's experience in different fields. Plaintiffs also showed that the women generally had a higher level of education than the men hired. This evidence produced by the plaintiffs, and the undisputed fact that John Johnson made all the hiring and salary decisions without formal, objective criteria, which was itself a discriminatory practice, enabled the plaintiffs to carry their burden of proving by a preponderance of the evidence that the defendant's proffered nondiscriminatory explanation of its action was pretextual, that a discriminatory intent motivated its actions, and that discrimination in hiring was the defendant's standard operating procedure. *See Teamsters*, 431 U.S. at 336, 97 S.Ct. at 1855; *see also McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Defendant failed to rebut the plaintiffs' showing. It did not prove by a preponderance of the evidence that the adverse action would have been taken even in the absence of the discriminatory motive. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

## II. Promotion Discrimination Claims

### A. Individual Claims

The evidentiary burden imposed on plaintiffs seeking to establish prima facie claims of hiring discrimination in *McDonnell Douglas* has been interpreted to impose a similar burden on plaintiffs alleging claims of promotion discrimination.

A plaintiff may establish a prima facie case of promotion discrimination by proving that he or she is a member of the protected minority, was qualified for and applied for promotion, was rejected despite these qualifications, and that other employees with equal or lesser qualifications who were not members of the protected minority were promoted.

*Perryman,* 698 F.2d at 1142 n. 7 (citing *Crawford v. Western Electric Co.,* 614 F.2d 1300, 1315 (5th Cir.1980), and *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir. 1981)).

### 1. Perryman

Plaintiff Patricia Perryman, a college graduate, was hired by the defendant in July 1971, and was discharged in July 1974. She had background and work experience in beauty sales and began with the company as a cosmetic merchandiser. When this job category was eliminated in December 1971, she was promoted to the position of retail sales representative at a salary of less than $8,500. Males hired into the retail sales division at this time and shortly thereafter received salaries in excess of $9,500. Perryman testified that in 1972 there was a vacancy for the district sales manager's position in her district. The position was assumed by John Johnson in Chicago even though Perryman did the manager's work in the field. She did not receive any increase in salary or official recognition by title for performing this additional work. While she did this extra work her district led the nation in sales volume. Perryman received a bonus every quarter that the company sales bonus program was in effect and she also got a small gift of company stock in 1973. The bonuses and stock were not, however, given because of her performance of the district manager's duties, but were awarded to all sales personnel in Perryman's district based on district-wide performance.

Perryman performed the duties of the district manager from August 1972 until February 1973 when Roosevelt Wilson was transferred from his position as a sales supervisor in Louisiana to take over as the new district manager in Atlanta. Perryman contended that she should have been promoted to the position Wilson received. She sought other promotions as positions subsequently became available in the company but never received any of these jobs. Perryman testified that while she was employed with the company she did not know of any women who were promoted above the position of sales representative. She complained about her failure to advance to Johnson who knew that she wanted a position as district manager. He would never commit himself to give her that position. She testified that Glenny Morgan, who came to work for the company six months after she did, but was a member of her training class, got three promotions. He progressed from sales representative to sales supervisor, district manager, and regional manager. Roosevelt Wilson, who also started six months after Perryman, got two promotions to sales supervisor and district manager. Sam Haynes came to the company about one year after Perryman and got two promotions. Henry Young and Sam Perryman both started with the company after Perryman and they each received a promotion. Perryman claimed that she was as qualified, if not better qualified, than any of these men who were promoted because of her good performance record and her on-the-job experience in handling a district manager's job.

Defendant offered three reasons to explain its failure to promote Perryman. The company contended that Perryman did not show that she was qualified for the promotions she sought, she did not show that she had more experience than the men who were promoted, and that she was psychologically unfit. Defendant's witness Mrs. Myles also testified that, contrary to Perryman's belief, three women were promoted to district manager positions. These proffered explanations satisfied the defendant's burden of rebutting plaintiff Perryman's

prima facie case. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Perryman,* 698 F.2d at 1142.

■ Perryman responded to the defendant's rebuttal presentation and carried her ultimate burden of establishing by a preponderance of the evidence that a discriminatory intent motivated the defendant's action. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. Perryman established that she was qualified for promotion to a district manager position. She performed as acting district manager in the field for her district for approximately six months and there was no evidence that her work was anything but satisfactory. Testimony at trial by both the plaintiffs' and defendant's witnesses established that the company had no formal, written promotion policy and that there were no specific criteria that would automatically qualify an employee for promotion. Mrs. Myles, the administrative assistant to John Johnson, testified about the company's promotion policy. The basis for her understanding of the policy came from her close contact with Johnson while working for him for a number of years. She stated that the first criteria for promotion would be the need to fill a position. This condition clearly existed when the district manager position in Atlanta, Perryman's district, became vacant in August 1972. Perryman took over the responsibilities and Johnson assumed the title while remaining in Chicago. Defendant offered no explanation for why Perryman or someone else was not made district manager in August 1972.

The second criterion for promotion described by Myles was consistent, above average performance of the employee being considered for the position. Perryman's performance was clearly above average during the time she did the work of the district manager while continuing her job as a retail sales representative. Her district had the highest sales volume in the country during this time and Perryman consistently met or exceeded her sales quotas, receiving quarterly bonuses through-

out the period of the company's bonus program.

Perryman testified that because there was no formal promotion system and job vacancies were not posted, employees seeking promotions communicated their interest to management and would then be considered for positions if their job performance was satisfactory. This general description of the promotion policy is consistent with the testimony of the defendant's witnesses. Perryman stated that she made her interest in promotion known to the company management and Myles testified that Perryman was considered for promotion but was rejected.

Perryman satisfied her burden of proving that the male employees who were promoted had equal or lesser qualifications for the positions she sought but did not receive. It is undisputed that Perryman had practical experience in the district manager position. None of the men who were promoted to this position had this kind of experience with the company before their promotions. Plaintiff Perryman's on-the-job experience with the company in this position made her at least as qualified for a district manager position as the men who were promoted without this practical experience.

■ Defendant's contention that Perryman's promotion discrimination claim failed because she did not show that she had more experience than the men who were promoted presented an irrelevant argument. Perryman was not required to show that she had more experience than the men promoted to make out a promotion discrimination claim. *See Perryman,* 698 F.2d at 1142, n. 7.

Defendant's argument that Perryman's psychological profile made her unfit for promotion was shown to be a pretext. As a sales representative and as an acting district manager, Perryman's sales performance demonstrated that she was an above average employee who handled her responsibilities capably. Regardless of what the defendant's psychological consultant concluded from his evaluation of Perry-

man at the time she was hired, her job performance was not noticeably affected by her alleged immaturity and prejudices. There was no testimony about any work problems Perryman had that reflected or related to the psychological traits that the consultant identified. There was no indication that the psychological report was ever relied on by the defendant when it made any of its decisions concerning Perryman's employment, promotion, or discharge.

Plaintiff Perryman established her individual claim of promotion discrimination. Defendant failed to prove by a preponderance of the evidence that the adverse action Perryman complained of would have been taken even in the absence of a discriminatory motive. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Perryman,* 698 F.2d at 1143.

### 2. Reddick

Plaintiff Helen Reddick has a college degree. She went to work for the defendant in June 1972, on a part-time basis demonstrating cosmetics. All of the demonstrators were women. Reddick left this position after four months to accept a full-time job with Southern Bell. Shortly after beginning this job Reddick interviewed with Johnson. Reddick later received a telephone call from Mabel Morgan, the director of the professional sales division for Johnson Products, who told her that she was hired for a part-time position in the professional division. Reddick told Morgan that she wanted a full-time position in either of the sales divisions. Morgan said she would be in touch. Reddick also received a letter from Johnson offering her employment and stating that it would be two to six months before she could be placed in a full-time position. Reddick decided to continue her full-time employment with Southern Bell and wait for a full-time position with the defendant.

In February 1973, Reddick was hired by the defendant and told to report to the training center in Chicago for a two week training program. Seven men and three

women began the program, all of whom were full-time employees with the exception of Reddick. Plaintiff Reddick was the only female to finish the course. At the end of the course Velma Glenn assigned Reddick to Atlanta to work on a part-time basis in the professional sales division. Reddick testified that when she received this assignment she told Glenn that she needed a full-time position and had been under the impression that she would receive one. Reddick expressed her desire to work the out of town areas around Atlanta which would require a full-time position. At the time these areas were not serviced by any professional sales representative. She testified that Glenn told her that because the Atlanta area was so large the company wanted one person to handle it on a part-time basis. Reddick accepted the three day a week position in Atlanta. This part-time job did not include any company benefits.

In July 1973, Bruce Johnson was hired by the company as a full-time retail sales representative assigned to Atlanta. Although Reddick was assigned to the professional sales division, she had been handling some retail accounts in the area. Reddick provided Bruce Johnson's training in the field after his classroom training in Chicago. Reddick worked full-time while she trained Bruce Johnson but she was returned to part-time status when he finished training. Upon completion of his training Bruce Johnson took over some retail accounts that Reddick had been servicing. Reddick was promoted to a full-time position in the professional sales division shortly after Bruce Johnson had finished his training.

Reddick claimed that the defendant discriminated against her when she was not promoted to a full-time position before Bruce Johnson received one and because when she was made a full-time employee her salary was roughly $8,000 a year while Johnson received a salary of $9,000.

Reddick also asserted that she was discriminated against because Mr. Steve Cummings was promoted from professional sales representative to professional sales supervisor and she was not. Cummings was a member of Reddick's training class in February 1973 and received this promotion sometime before August 1974. Reddick also alleged that Mr. Eugene Robinson started with the company after she did and that he received a promotion while she did not.

Plaintiff Reddick established her prima facie case of promotion discrimination with respect to the hiring of Bruce Johnson. *See Perryman,* 698 F.2d at 1142, n. 7. Reddick successfully completed the classroom training session in Chicago. This program provided training for sales representatives in both the retail and professional divisions. She finished her training in the field and had practical, on-the-job experience handling both professional and retail accounts. She had expressed her desire for full-time employment in either sales divisions several times to management personnel in the company. Reddick testified that four to six months after the session in Chicago Mrs. Glenn informed her that she had satisfactorily completed the training process and that Glenn would recommend her for full-time employment. With this evidence Reddick established her prima facie case by showing that she was qualified for and sought promotion to a full-time position but was passed over in favor of Bruce Johnson who did not have the practical experience.

Reddick failed to establish the necessary prima facie case to support her claims of discrimination based on the promotions that Cummings and Robinson received because she failed to produce evidence about their qualifications.

Defendant offered an explanation of its treatment of Reddick which was sufficient to meet its burden of rebutting the plaintiff's prima facie case of discrimination with respect to the hiring of Bruce Johnson for a full-time sales position in place of promoting Reddick to the position. Defendant hired Reddick to be a sales representative in the professional division. She was assigned to Atlanta and the company

had decided that the Atlanta area would be served by a part-time professional sales representative. Bruce Johnson was hired for a full-time position in the retail division, not the professional division to which Reddick was assigned. Defendant also contended that its failure to promote Reddick was justified by her poor job performance.

■ Plaintiff Reddick carried her burden of establishing by a preponderance of the evidence that the defendant's action was motivated by a discriminatory intent. It is undisputed that at the time Reddick was hired and assigned as a part-time professional sales representative in Atlanta, the professional accounts in Georgia outside of Atlanta were not being serviced by a professional sales representative. The company knew of Reddick's desire for a full-time position. Defendant offered no explanation as to why she was not hired originally on a full-time basis to handle these accounts. Reddick testified that when she complained about her part-time assignment to Mrs. Glenn she was told there were questions about her ability to make it through training. The court finds that this explanation is not credible. All of the other people in Reddick's training class were hired initially as full-time employees although they had not completed or even begun the sales representative training process at the time. Reddick completed the classroom training and the field training. Reddick's completion of the training process shows that Glenn's explanation was pretextual.

Reddick had the classroom training and the practical experience to handle the full-time retail sales representative position that Bruce Johnson received. The company clearly thought Reddick was competent to service retail accounts because she was given retail accounts to manage in addition to her professional accounts and she was chosen to provide the field training for Bruce Johnson who was a retail representative. Haynes testified that the defendant's policy was to promote from within the company if at all possible. The company's decision to hire Bruce Johnson from out-side the company rather than promote Reddick to the full-time retail sales position violated this policy.

The court rejects the defendant's assertion that Reddick's poor performance was the reason she was not promoted to the position Bruce Johnson received. This explanation is not credible in light of the fact that Reddick was chosen to train Bruce Johnson. If, as the defendant alleged, Reddick's job performance was poor it is not reasonable to believe that Reddick would have been chosen to train Bruce Johnson. Plaintiff Perryman was a full-time retail sales representative in Atlanta during this period and she would have been the logical choice to provide Bruce Johnson's training if Reddick had been a less then satisfactory employee. Although there were allegations that Reddick subsequently had some problems on the job, there was no evidence that there were any complaints about or problems with the quality of her performance in the period before Bruce Johnson was hired, which is the relevant time period for this claim.

Defendant failed to rebut Reddick's evidence which created a presumption that the adverse treatment she received was the product of discriminatory intent. Defendant did not prove by a preponderance of the evidence that the adverse action Reddick complained of would have been taken even in the absence of a discriminatory motive. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Perryman, 698 F.2d at 1143. Plaintiff Reddick established her individual claim of promotion discrimination with her evidence concerning the hiring of Bruce Johnson.

### B. Class Claims

Plaintiffs made out their prima facie case of promotion discrimination with testimony from two women who had been employed by the defendant and with evidence of the defendant's promotion record and practices.

Rolena Porter was hired by the company as a professional sales representative in January 1969, but she transferred to the

retail sales division nine months later. Porter's work experience before joining Johnson Products included approximately five years in cosmetic sales. She testified that a man, Vernon Mitchell, who was hired the same day as she was received a starting salary of $12,000 while her starting salary was $6,000. Porter was never promoted during her six and one-half year tenure with the defendant, but she testified that male employees, hired after she was, were promoted. These men were Ed Moore, Glenny Morgan, Sam Haynes, Steve Cummings, Sam Perryman, Anthony Banks, and Roosevelt Wilson. Porter met all her sales quotas and received all bonuses given by the company. These accomplishments and her testimony that she never received any complaints about her work established that she had a good work record. Porter sought promotion into managerial positions as they became available. She had several conversations with managers, including Hall and Moore, during which she requested promotions. Porter testified that she did not know of any other women who were promoted within the sales division and she stated that there were other well-qualified female employees who were also bypassed for promotions which men received. She testified that Moore had productivity and performance problems as a sales representative which were well known by the sales people in the district, but that he was nonetheless promoted to district manager. Before Moore joined Johnson Products he had no experience with cosmetics or beauty product sales. He had worked in beer sales. Several of the other men Porter testified about also had no previous experience in health or beauty products sales but had worked in insurance sales.

Claudette Trufant Wallace was hired as a cosmetic merchandiser in New Orleans in July 1971. Twelve women, including Patricia Perryman and Rolena Porter, were hired for these newly created positions. Wallace was hired at a salary of less than $7500. She had four years of experience in cosmetic sales when she was hired by Johnson Products. Wallace became a sales rep-

resentative in December 1971 when the cosmetic merchandiser program was abolished. Wallace testified that male sales representatives received higher salaries and larger bonuses than their female counterparts. She also testified that a number of men who were hired at the same time or subsequent to the hire of Reddick, Perryman, and herself, and who had no more experience, and in several cases less experience in a related field, were promoted to district sales managers over these women.

Wallace trained Glenny Morgan for four to six months when he started as a sales representative because he had no background in health care, cosmetics, or beauty products. Wallace alleged that she was denied an opportunity to be promoted to the district manager position because Morgan joined the company with the knowledge and understanding that he was training for this position. Wallace stated that men who were hired after women received promotions within the company while the women did not. Some of Wallace's examples of this promotion practice included men that Porter had discussed in her testimony.

Defendant responded to the plaintiffs' showing with evidence that some of the men promoted ahead of women had more years of sales experience than the women. Although the men's sales experience was not in the beauty products field, some of them had held supervisory and managerial positions in their previous jobs. For example Morgan had been a sales manager for an insurance company and Mitchell had been in management position with a tobacco company. Defendant's evidence raised a genuine issue of fact as to whether it discriminated against the plaintiff class. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

■ Plaintiffs established by a preponderance of the evidence that a discriminatory intent motivated the employer's action and that discrimination in promotion was the standard practice at the company. *See Teamsters,* 431 U.S. at 336, 97 S.Ct. at

1855; *see also McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

As was true for hiring criteria, the testimony at trial established that there were no standard, objective promotion criteria which were used consistently at Johnson Products. John Johnson was the ultimate decision-maker for all promotions within the sales organization. Haynes testified that he was told numerous times that the company's policy was to promote from within whenever possible and to hire from outside only as a last resort when there were no qualified people within the company. Haynes said that he was told to point out this policy to prospective employees when he did the initial screening of applicants before Johnson's final decision. This policy was discussed during job interviews, Haynes said, because Johnson Products wanted potential employees to know about the unlimited opportunities within the company. Haynes also testified, however, that Johnson was not consistent in evaluating the qualifications of personnel considered for promotion; in some instances he weighed sales experience more heavily than education while in other cases the reverse was true. In addition, Haynes testified that he did not know of any women promoted from a sales position to a supervisory or managerial position before this lawsuit began.

Perryman testified that she was told that productivity was the most important criteria for promotion within the sales operation. This is consistent with the testimony of Myles who testified that fulfilling the goals set by the sales division was the requirement for promotion. Myles testified that this performance standard was used for all promotions within the sales organization and that there had not been any change in the promotion policy between 1974 and the time of trial.

Plaintiffs established that the defendant's articulated, nondiscriminatory explanation for promoting some men rather than women was pretextual. The evidence presented in support of the class claim of promotion discrimination demonstrated that women with good work records who consistently met their sales quotas and had previous experience in sales, were not promoted while men who were no better qualified, and in some instances less qualified, were promoted. According to the stated and understood promotion policy, women with good performance records should have received promotions that actually went to men. There was testimony that in two instances men were hired initially as sales representatives but with the understanding that they would move into supervisory positions. If the company had followed its stated policy of promotion from within, qualified women already working in the sales division would have received these positions. There was testimony that there were women with good performance records who sought these promotions but were bypassed in favor of men. This treatment accorded qualified women violated the defendant's promotion policy.

The record in this action reveals that although objective promotion standards may have been promulgated by the defendant, the stated policy to promote from within was not followed in actual practice with respect to women employees. Plaintiffs' evidence that qualified, experienced women with good performance records were consistently bypassed for promotions in favor of men who were equally or less qualified for the promotions established that the defendant's proffered explanation of its decision to promote men in favor of women because of the greater sales experience of the men was pretextual. While some of the men who were promoted may have been better qualified than some of the women who were not promoted, the plaintiffs showed by a preponderance of the evidence that the practice of promoting men and not promoting women was consistently followed within the company regardless of the particular qualifications of the individual employees. Plaintiffs proved that the defendant failed to establish and consistently apply reasonably objective standards for promotion. This discriminatory practice, *cf. Watson v. National Linen Service*, 686 F.2d 877, 881 (11th Cir.

1982) (failure to establish fixed or reasonably objective standards and procedures for hiring is a discriminatory practice), resulted in discriminatory treatment of women sales personnel at Johnson Products.

Defendant failed to rebut this showing by the plaintiffs. It did not prove that this adverse action against the women would have been taken even in the absence of the discriminatory motive. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

## III. Discharge Discrimination Claims

Plaintiffs asserted individual and class claims of discrimination arising from their discharge from employment with the defendant. Plaintiffs Perryman and Reddick also alleged that the defendant terminated them in retaliation for their participation in activities to vindicate civil rights protected by Title VII. *See* Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a).

The Eleventh Circuit has interpreted the three-part test announced in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, to "provide that a prima facie case of discrimination in termination is established where:

> the plaintiff proves by a preponderance of the evidence that he or she is a member of the protected class, was qualified for the position held, and was discharged and replaced by a person outside of the protected class or was discharged while a person outside of the class with equal or lesser qualifications was retained."

*Perryman*, 698 F.2d at 1142 (quoting *Lee v. Russell County Board of Education*, 684 F.2d 769, 773 (11th Cir.1982)).

To prove a prima facie case of retaliation under section 704(a) the plaintiff must establish "(1) that there was a statutorily protected participation, (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action." *Whatley v. Metropolitan Atlanta Rapid Transit*, 632 F.2d 1325, 1328 (5th Cir.1980) (Unit B).

### A. Individual Claims

#### 1. Perryman

Plaintiff Perryman was discharged from her position as a retail sales representative on July 12, 1974. Perryman established that she was qualified for this position. *See* discussion *supra*, this order at 1023–1024. She argued that she was discharged because she spoke out against company policies and attitudes that discriminated against women.

Perryman testified that during a company sales meeting she had expressed concern about how the defendant treated its female employees. At the 1973 national sales meeting Perryman was included in the program because she had the number one retail account in the country. During her presentation she talked about this account but also discussed how the company was not allowing women to manage major accounts, thus denying them the opportunity to earn larger bonuses and to be recognized as top sales people in the company.

In late June 1974, Perryman met with Glenny Morgan and Roosevelt Wilson to discuss her work. She testified that during this meeting she complained about discriminatory treatment she received while working for the defendant. She told these men that she was discouraged about her work because she had not advanced within the company during her three years there despite her proven sales performance. She confided to them that she had career goals in the beauty field beyond a sales position. These objectives included advising, modeling, and critiquing.

About two weeks later Perryman, Morgan, and Wilson had another conference. Perryman testified that Morgan announced that, in light of her complaints, the best thing for her to do was to resign. Perryman said she had no reason to resign but was told by Morgan that the decision had already been made to terminate her. When she asked Morgan why she was being terminated, he told her that she had postponed some store promotions. Perryman objected to this explanation and she testified that

Morgan then apologized to her but repeated that the decision to terminate her employment had been made. Morgan told her that he would not remove her name from the payroll until he received a letter of resignation. Perryman later informed him to send her a termination letter because she would not resign. She received a letter stating she was terminated because of her lack of interest in pursuing a sales career and her inadequate job performance. Perryman's position was filled by Sam Perryman, a sales representative who transferred to Atlanta from Tennessee.

Perryman testified that she had never received any complaints or warnings about her job performance, had never failed to make her sales quota, and had never been placed on probation. She argued that the real reason she was discharged was because she had taken a stand against the company's allegedly discriminatory attitude and practices towards women employees generally and its discriminatory promotion record specifically. Her position on these issues was well known within the company because she had expressed her views openly at company meetings and to her co-workers.

Perryman established a prima facie case of retaliatory discharge. Defendant, however, rebutted the prima facie case by articulating legitimate, nondiscriminatory reasons for the termination of her employment, *i.e.*, her inadequate job performance and lack of interest in a sales career. *See Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Perryman*, 698 F.2d at 1145.

■ Perryman responded to the defendant's rebuttal explanation and carried her burden of establishing by a preponderance of the evidence that the defendant's action in terminating her employment was motivated by a discriminatory intent. Perryman's evidence proved that the nondiscriminatory reasons the defendant offered to explain Perryman's discharge were pretextual. Although Myles testified that Perryman had been considered for an unspecified promotion at some time, and did not receive it because her performance had slipped,

this testimony is not sufficient to support the defendant's proffered explanation in light of the overwhelming evidence of Perryman's good performance record. Perryman's testimony that she never received any warnings or complaints about her job performance was undisputed. She was not placed on probation at any time before her discharge. The fact that she consistently met her sales quota and qualified for all available bonuses established that her job performance certainly exceeded the standard performance requirements set by the defendant for its sales representatives. Even assuming that Perryman's disillusionment with her work adversely affected her performance towards the end of her employment with the defendant, she met her sales quota and qualified for a bonus during the quarter in which she was terminated. Regardless of her long term interest in sales as a permanent career, it is clear that her long term career objectives were not hindering her performance as a sales representative.

The manner in which Perryman was terminated also provides evidence that a discriminatory intent motivated the defendant's action. Perryman was not terminated in accordance with the standard discharge procedures. Haynes described the defendant's stated discharge procedures and policies. Haynes testified that employees were to be given quarterly performance and salary evaluations. If an employee received an unsatisfactory evaluation, the supervisor reviewed the problem and the evaluation with the employee. The employee was warned and given a period of time to clear up any deficiencies. Haynes testified that this time period was usually prescribed after discussion with John Johnson. If the problems continued after this set time, the employee would be put on probation by the supervisor. The length of the probation period would also be prescribed by Johnson. If the employee did not perform satisfactorily while on probation he or she would be discharged. Johnson made the decisions to terminate employees. Haynes testified that failure to

achieve sales quotas would be a reason for termination in accordance with these discharge procedures. He stated that dishonesty or falsification of expense reports were grounds for automatic termination without warning or probation. Perryman consistently made her quotas and there were no allegations that she violated any of the defendant's rules which dictated automatic discharge. Further proof of the defendant's discriminatory intent in terminating Perryman was provided by testimony about other sales representatives who violated company policy by handling competitors' products but who were not summarily terminated as Perryman was. Ernie Barbee represented a competitor's product line while working for Johnson Products but he was placed on probation and later reinstated. Perryman testified that another male representative, Neal Reeves or Neal Craig, had also handled a competitor's products. He was terminated but was later rehired with a promotion and salary increase.

Perryman's evidence established that she was successfully performing her duties as a sales representative when, contrary to the defendant's probation and termination policy, she was summarily discharged. Perryman's opinions about sexual discrimination within the company were well known. Perryman proved by a preponderance of the evidence that the defendant's nondiscriminatory explanations for terminating her were pretextual and not credible, and that a discriminatory and retaliatory intent motivated its action. Defendant did not introduce evidence to rebut Perryman's showing of discriminatory intent and thus failed to prove that the adverse action would have been taken even in the absence of the discriminatory motive. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

### 2. Reddick

Plaintiff Reddick asserted that she was discharged from her job in retaliation for filing a charge of discrimination with the EEOC. Reddick's employment as a professional sales representative was terminated on April 8, 1975.

In August 1974, Reddick filed a charge with the EEOC complaining that discriminatory conditions within the company were interfering with her job performance. She complained that she was receiving contradictory and confusing instructions from her supervisors. Reddick apparently believed that her female supervisor, Velma Glenn, was experiencing discrimination in her work. From Reddick's perspective, the discriminatory treatment accorded Glenn disrupted the supervision of Reddick's work and thus adversely affected Reddick's job performance. Prior to filing this complaint Reddick had not received any warnings about the quality of her job performance and had not been placed on probation. Reddick testified that the only feedback she had received was through letters from the company headquarters in reference to her work. These letters were of a positive nature.

Reddick testified that in August, after she filed the EEOC charge, she was questioned by John Johnson about her charge. At a meeting with Johnson and Velma Glenn in October, Reddick was again questioned about her EEOC charge. Johnson asked her whether she understood the implications of her charge. She testified that he asked her to drop the charge and also asked her if she could afford to file the charge against the company. During this meeting Johnson informed Reddick that she was being placed on probation for 45 days and that her performance would be monitored. Reddick testified that Johnson did not tell her that her job performance was not satisfactory, only that she would have to prove her performance to him. He told her that if she could prove herself during the probationary period she would get an increase in salary. During her probationary period Reddick received a letter from Glenn commending her performance and also offering a pay raise to be effective in January or February. Reddick never received any increase in salary.

Haynes testified that the usual practice followed by the company concerning employee probation was that the immediate

supervisor of the employee in question was the person who put the employee on probation. During the meeting in October Reddick was put on probation by Johnson rather than Glenn who was her immediate supervisor. Reddick did not know of any other person who was ever put on probation by someone other than his or her immediate supervisor.

On January 8, 1975, Glenn notified Reddick by letter that she had successfully completed her probation. *See* Plaintiffs' Ex. 19A. Later in January Glenn came to Atlanta to monitor and work with Reddick in the field handling her sales accounts. Reddick testified that because of foot surgery she was unable to work for two weeks in January before Glenn's visit.

In April 1974, Reddick was verbally terminated by Walter Leaphart, the Director of the Professional Sales Division. Reddick requested a written explanation of why she was being discharged and subsequently received a letter citing poor job performance as the reason.

 Filing a charge of discrimination with the EEOC is a protected activity under Title VII. Reddick's testimony that after she filed her charge she was called to two meetings with the company vice-president who questioned her about the charge, asked her to withdraw it, made a threatening statement about the security of her job because of the charge, and placed her on probation without following company procedure, established that adverse employment action was taken against her and that there was a causal connection between her protected action under Title VII and the adverse action by her employer. Reddick succeeded in establishing her prima facie case of retaliation under section 704(a) of Title VII. *See Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325, 1328 (5th Cir.1980) (Unit B). Defendant did not offer evidence to rebut this prima facie case. It did not articulate a legitimate, nondiscriminatory reason for the treatment Reddick received from the time she filed her EEOC charge until she completed her probationary period. Be-

cause the defendant failed to carry its burden, Reddick's prima facie case of retaliation is unrebutted, and judgment must be entered for Reddick as a matter of law. *See Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

Reddick's testimony that she was discharged without receiving any warnings or complaints about her performance after she completed her probation, established that the circumstances of her termination did not include use of the procedures in the company's discharge policy. Reddick succeeded in making out a prima facie case of discriminatory discharge. Defendant rebutted this prima facie case by articulating a legitimate, nondiscriminatory reason for discharging her, *i.e.*, her poor job performance. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Defendant introduced documents from Reddick's personnel file to support its assertion that unsatisfactory job performance lead to her discharge.

Reddick carried her ultimate burden of proving by a preponderance of the evidence that a discriminatory reason more likely motivated the defendant's action in discharging her. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The events following the filing of her EEOC complaint, *i.e.*, the meetings with Johnson and departure from standard policy in handling her probation, established the defendant's retaliatory motive in its actions against Reddick up to approximately four months before she was fired. Reddick also had direct evidence of discrimination in her discharge. Haynes testified that Johnson told him that Reddick was fired because of her stand against discrimination. Defendant offered no evidence to rebut this direct evidence of bias. This direct evidence combined with the events following the filing of Reddick's EEOC charge and culminating with her discharge approximately eight months later, established that a discriminatory reason more likely motivated the defendant's action against Reddick. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Defendant did not prove that the adverse action against Reddick would have been

taken even in the absence of a discriminatory and retaliatory motive. *See Mt. Healthy*, 429 U.S. 274, 289, 97 S.Ct. 568, 576, 50 L.Ed.2d 471.

### B. Class Claims

█ Plaintiffs established their class claims of discrimination in employment termination with testimony from class members who described the circumstances of their discharges and by evidence contrasting the stated discharge policies with the actual procedures followed when terminating women employees in the sales operation of Johnson Products. As was true for hiring and promotion standards, the plaintiffs demonstrated that the defendant employer failed to establish or apply fixed or reasonably objective standards for termination. This lack of objective discharge standards is a discriminatory practice. *Cf. Watson v. National Linen Service*, 686 F.2d 877, 881 (11th Cir.1982).

Porter, a class member, testified that she was fired without notice in June 1975. She had worked for the defendant for more than six years. She was told that she was being discharged for unsatisfactory job performance but Haynes also told her that an attorney had told him not to discuss the reason for her termination with her. Porter testified that she had received no warnings about her performance on the job, had never been placed on probation, and had had no complaints about her work before being discharged. In October 1974, she had written to John Johnson complaining about her failure to advance within the company while men were promoted and about the fact that some of her larger accounts had been transferred to male sales representatives. She received a response from Johnson but she stated that he had not satisfactorily addressed her concerns.

Haynes also testified about the events leading to Porter's termination. In June 1974, John Johnson instructed Haynes to terminate Porter. Haynes was not told why she was to be discharged. Haynes explained to Johnson that he understood that Porter's performance had been satisfactory and he pointed out that at the annual meeting her work had been specially recognized and brought to the attention of others in the company. Haynes told Johnson that he thought that if there were performance problems, Porter was not aware of them and that she should be told of them and given an opportunity to correct any deficiencies. Haynes informed Johnson that he would not terminate Porter at that time and that if Johnson wanted her out he would have to fire her himself. Haynes testified that during the next year he was told repeatedly to terminate Porter but he did not do so. Finally, Johnson told Haynes that Porter would not be included in some travel plans and that Haynes would either have to fire her or offer some other explanation of why she was not going on the trip. Haynes terminated her at the airport in Memphis. He testified that he did not know of any male employee who was discharged in this manner. Haynes was later told to assemble a derogatory file on Porter. He understood that the EEOC had requested Porter's file and the company had nothing in her file. He put together the file as requested. Haynes also testified that he thought sex was a factor considered in making the decision to discharge another female sales representative, Isabel Paulding, whom he was instructed to discharge. On a more general level Haynes thought, based on his contact with company management, that the company discriminated against women.

Wallace, another class member, also described the circumstances surrounding her employment termination. In April 1974, Mr. Morgan came to Wallace's house and told her she was finished at Johnson Products. Morgan told her that he did not have a reason for firing her, only an order from John Johnson to terminate her. Morgan also told her that he had been told sometime earlier to get rid of her. Wallace believed that she was terminated because she had established complete distribution of the company's cosmetics in Louisiana and Mississippi and the accounts could be maintained by male sales representatives.

She testified that her position was filled by a man.

The evidence about the stated and understood discharge policies and procedures of the defendant company, discussed above, is also relevant to the class claims of discrimination. Testimony at trial established that despite the existence of these discharge procedures and policies, the termination decisions, made solely by Johnson, were sometimes arrived at before the preliminary warning and probation steps were taken. The terminations of Wallace and Porter were not in compliance with the stated discharge policy and procedures. Neither of these women was accused of falsifying reports or dishonesty, the two grounds for discharge without warning or probation. The plaintiffs established their class claims of discriminatory discharge by showing that objective discharge standards were not consistently applied by Johnson in terminating sales personnel at Johnson Products. Testimony also showed that male employees were given warnings and probation, sometimes several times before being terminated. There was no evidence that any male sales employees were summarily discharged in the manner that Wallace and Porter were. Plaintiffs established by a preponderance of the evidence that discriminatory discharge procedures were regularly used when terminating female employees in the sales operations of the company. *See Teamsters,* 431 U.S. at 336, 97 S.Ct. at 1855.

Although the defendant successfully rebutted the prima facie case of discriminatory discharge made out by the named plaintiffs, the defendant failed to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory action taken against the class members. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Defendant did not offer evidence that poor job performance prompted its decisions to discharge the class members. More importantly, the defendant failed to offer any explanation for why the discharge procedures and policies were not consistently applied when female sales personnel were terminated but were apparently followed when males were fired. Defendant failed to produce evidence to raise a genuine issue of fact as to whether it discriminated against the class members. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. Plaintiffs' case establishing the class claims stands unrebutted, and judgment on these claims will be entered for the plaintiff class. *Id.*

### Conclusions of Law

To the extent that any conclusions of law are required in determining the above findings of fact, these conclusions are incorporated herein.

There is no dispute as to the jurisdiction of this court over the subject matter or the parties to this litigation.

The employment practices and policies of the defendant employer regarding its refusal to hire women into the sales operation of the company, its denial of promotion opportunities to female employees on the same terms and conditions as male employees, and its failure to follow objective standards and procedures in hiring, promoting, and terminating female employees while generally complying with these criteria when dealing with male employees are unlawful employment practices proscribed by Title VII, 42 U.S.C. §§ 2000e, *et seq.* Defendant also engaged in unlawful employment practices by retaliating against employees for filing charges with the EEOC complaining of sex discrimination and engaging in activities protected under Title VII.

Plaintiffs established a pattern and practice of sex discrimination for themselves and their class. Plaintiffs demonstrated purposeful and disparate treatment on the basis of sex by the defendant. Although the defendant was able to carry its burden of rebutting the majority of the plaintiffs' prima facie showings, the plaintiffs successfully carried their ultimate burden of proving by a preponderance of the evidence that the defendant engaged in sex-based discrimination in its hiring, promotion, and discharge policies and practices.

Counsel for the plaintiffs are ORDERED to prepare a decree incorporating the conclusions of the court and to present the same, after presenting the decree to counsel for the defendant for approval as to form, within thirty (30) days of the date of entry of this order. The decree should specifically provide for notice to the class respecting any monetary relief, and providing for the means and method of determining entitlement, if any, thereto and of distributing any monetary relief.