**William HALL, Plaintiff,**

v.

**Gene DEMPSEY, et al., Defendants.**

No. Civ.A. 99–D–716–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 13, 2000.

---

Jimmy D. Jacobs, Montgomery, AL, for plaintiff.

Susan Shirock DePaola, Samford & De-Paola, P.C., Montgomery, AL, Barry R. Holt, Barry L. Holt, LLC, Montgomery, AL, for defendant.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' Motion For Summary Judgment ("Mot."), filed March 22, 2000, along with a Brief in support thereof ("Br."). On April 7, 2000, Plaintiff filed an Opposition To Defendants' Motion For Summary Judgment, which the court construes as a Response ("Resp."). On April 14, 2000, Defendants filed a Reply On Motion For Summary Judgment ("Reply").

Also before the court is Plaintiff's Objection To Defendant's Evidentiary Submissions And Motion To Strike ("Mot. To Strike"), filed April 25, 2000. On April 28, 2000, Defendant Gene Dempsey ("Dempsey") filed a Response To Plaintiff's Motion To Strike ("Resp. To Mot. To Strike"). Plaintiff filed a Reply thereto on May 18, 2000 ("Reply To Mot. To Strike").

After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion For Summary Judgment is due to be granted in part and denied in part. Further, the court finds that Plaintiff's Motion To Strike is due to be denied as moot.[1]

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(4) (civil rights), and 42 U.S.C. § 1981 (Civil Rights Act of 1866, as amended) (" § 1981"). The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R.CIV.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities

---

1. In Plaintiff's Motion To Strike, Plaintiff challenges certain portions of Dempsey's Affidavit ("G. Dempsey Aff."), which was taken on April 14, 2000. However, the court finds it unnecessary to rely on the challenged portions of Dempsey's Affidavit. Consequently, the court finds that Plaintiff's Motion To Strike is due to be denied as moot because the court can adequately address Defendants' Motion For Summary Judgment without considering the challenged portions of said Affidavit.

when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED.R.CIV.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED.R.CIV.P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## BACKGROUND[2]

Defendant Dempsey, a white male, owns and operates Defendant G & D Materials, which is a company that specializes in hauling sand and gravel.[3] Plaintiff, a 53–year–old black male, began working as a driver for Defendants in February of 1999. Plaintiff has worked as a driver for various employers since graduating high school. Defendants apparently hired Plaintiff based solely on his experience as a driver because they did not require him to complete an employment application. Defendants did require Plaintiff to provide copies of his driver's license, commercial

driver's license ("CDL"), Alabama Department of Public Safety Driver License Abstract, and social security card. Plaintiff complied with Defendant's requirements and the aforementioned documents comprise the entire contents of his personnel file with Defendants.

Plaintiff's duties as a driver for Defendants consisted primarily of hauling sand and gravel. When not actively engaged in driving a truck, Plaintiff was required to perform other tasks, such as washing trucks and cleaning out truck cabs. Plaintiff was also required to perform daily maintenance and inspections of Defendants' trucks. The record indicates that Plaintiff attempted to perform all tasks assigned to him.

However, Plaintiff experienced some difficulty with his job on April 22, 1999, when he accidentally left his truck bed in the raised position as he was leaving a job site. As Plaintiff drove away, his truck bed caught a power line and pulled down the line and the temporary pole that was securing the line.[4] While this accident created a potentially dangerous situation, ultimately, no damage resulted to the job site or to the truck. Further, there is no evidence that Plaintiff was reprimanded for the pole incident. To the contrary, throughout the time that Plaintiff worked for Defendants, Dempsey told him that he was doing a good job.

Nevertheless, on April 27, 1999, Dempsey informed Plaintiff that he could no longer employ him because of added expenses and lack of work. For several days thereafter, Plaintiff contacted Dempsey to inquire about his old job. Although Dempsey maintained that there was not enough work for Plaintiff, Dempsey soon hired a white male for the job from which Plaintiff was discharged.

---

**2.** In ruling on the Defendants' Motion For Summary Judgment, the court has carefully examined all submissions by the Parties and has construed them in the light most favorable to Plaintiff, the non-moving party. *See Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992).

**3.** The court will hereinafter refer to Defendant G & D Materials and Defendant Dempsey collectively as "Defendants."

**4.** The court will hereinafter refer to this event as the "pole incident."

On July 13, 1999, Plaintiff filed a *pro se* Complaint ("Compl.") in this court, asserting various claims of racial discrimination against Defendants, pursuant to 42 U.S.C. § 1981. Subsequently, Plaintiff obtained counsel and filed an Amended Complaint on November 29, 1999.[5] While Plaintiff's Amended Complaint is somewhat disjointed, construing it broadly[6] leads the court to find that he has raised the following claims against Defendants: (1) discriminatory discharge under a disparate treatment theory in violation of 42 U.S.C. § 1981 ("discriminatory discharge") (Am. Compl.¶¶ 9–13); (2) retaliation on the basis of race in violation of 42 U.S.C. § 1981 ("retaliation") (*Id.* ¶ 14); and (3) tort of outrage ("outrage") (*Id.* ¶ 18.)

■ Although Defendants move for summary judgment on all of these claims, Plaintiff only opposes summary judgment with respect his discriminatory discharge claim. Indeed, Plaintiff does not submit any evidence or argument on his retaliation claim[7] or his outrage claim.[8] Accordingly, the court finds that Plaintiff has abandoned these claims,[9] and, thus, Defendants' unopposed Motion For Summary Judgment is due to be granted with respect to said claims. However, for the reasons that follow, the court finds that Defendants' Motion For Summary Judgment is due to be denied with respect to Plaintiff's discriminatory discharge claim.

## DISCUSSION

■ As stated, the only claim that Plaintiff sufficiently advances against Defendants is discriminatory discharge in violation of 42 U.S.C. § 1981. Specifically, Plaintiff contends that Defendants wrongfully terminated him on the basis of his race. Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."[10] *Fer-*

---

5. It is well settled that "[a]n amended complaint supersedes an original complaint." *Malowney v. Federal Collection Deposit Group,* 193 F.3d 1342, 1345, n. 1 (11th Cir.1999) (citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 601 (5th Cir.1981)). Accordingly, the court will only address the claims raised in Plaintiff's Amended Complaint.

6. Such a liberal construction of Plaintiff's Amended Complaint is required to ensure the provision of substantial justice to the adjudication of this case. *See* FED.R.CIV.P. 8(f) (stating that "[a]ll pleadings shall be so construed as to do substantial justice").

7. Plaintiff testified in his deposition that he had no evidence of, and no information to support, his retaliation claim. (Pl.Dep. at 46–50.) Plaintiff further testified that his sole contention in this lawsuit is that Defendants terminated his employment because of his race. (*Id.* at 41.)

8. "The Alabama Supreme Court has indicated that there are [only] three limited circumstances under which a claim of outrage[ ][ ] can go to the jury: cases having to do with wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric means to coerce a settlement; and cases involving egregious sexual harassment." *Carter v. Harris,* 64 F.Supp.2d 1182, 1194 (citing *Thomas,* 624

So.2d at 1044 (enumerating the categories set forth above and stating that the Alabama Supreme Court "has held in a large majority of the outrage cases reviewed that no jury question was presented")). After a careful examination of the record, the court finds that Plaintiff's vague outrage claim does not fall within any of these recognized categories. Therefore, the court finds that Plaintiff has not only failed to support his outrage claim, but has also failed to articulate sufficient factual circumstances that would allow his claim to be presented to a jury under Alabama law. *See Moore v. Beneficial National Bank USA,* 876 F.Supp. 1247 (M.D.Ala.1995) (granting summary judgment on a claim for outrageous conduct where facts of the case did not fit into facts which had been held by the Alabama Supreme Court to constitute outrageous conduct). Consequently, summary judgment is due to be granted as to this claim.

9. "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995).

10. 42 U.S.C. § 1981 provides, in relevant part, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

rill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir.1999). The allocation of burdens and elements of a prima facie case are the same for employment claims stemming from § 1981 and Title VII. See Richardson v. Leeds Police Dept., 71 F.3d 801, 805 (11th Cir.1995); Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994); Howard v. BP Oil Co., Inc., 32 F.3d 520 (11th Cir.1994).

 The critical element in establishing wrongful discrimination in violation of § 1981 or Title VII is discriminatory intent. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (Title VII); General Bldg. Contractors Ass'n., Inc. v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (§ 1981); Washington v. Davis, 426 U.S. 229, 246–48, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (§ 1981); Baldwin v. Birmingham Bd. of Educ., 648 F.2d 950, 954 (5th Cir.1981) (§ 1981).[11]

Discriminatory intent can be established through either direct or circumstantial evidence. See United States Postal Serv. Bd. of Gov. v. Aikens, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence of the employer's intent,[12] the court applies the familiar tripartite burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green and Texas Dept. of Comm. Affairs v. Burdine. See 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. See Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir.1997) (citations omitted). The purpose of the prima facie case is to show an adverse employment decision that resulted from a discriminatory motive. See Perryman v. Johnson Products Co., 698 F.2d 1138, 1143 (11th Cir.1983). If the plaintiff meets this burden, he or she is entitled to a legal presumption that the defendant acted with discriminatory intent. See Burdine, 450 U.S. at 254, 101 S.Ct. 1089; McDonnell Douglas, 411 U.S. at 801, 93 S.Ct. 1817. The effect of this presumption is to shift to the employer the burden of producing a legitimate, nondiscriminatory reason for the challenged employment action. See Combs, 106 F.3d at 1528 (citations omitted). This intermediate burden is "exceedingly light." Meeks v. Computer Assocs., Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994); see also Perryman, 698 F.2d at 1142; Turnes, 36 F.3d at 1061. The defendant "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 254–55, 101 S.Ct. 1089); see also Turnes, 36 F.3d at 1061. Should the defendant fail to meet its burden of production once the plaintiff establishes his or her prima facie case, "the unrebutted presumption of discrimination stands." Turnes, 36 F.3d at 1061 (citing Joshi v. Florida State Univ. Health Ctr., 763 F.2d 1227, 1236 (11th Cir.1985)).

If the employer satisfies this burden, however, the presumption of discrimination disappears from the case and the plaintiff must persuade the trier of fact that the employer's proffered reasons were pretextual and that the real reason for the adverse employment decision was, in fact, discriminatory. See Burdine, 450 U.S. at 253, 256, 101 S.Ct. 1089. "[T]he plaintiff has the opportunity to come forward with

---

**11.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**12.** Plaintiff admits that "[t]here is no direct evidence of discrimination in this case." (Resp. at 4.)

evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528 (citations omitted). This may be accomplished by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* As further explained in *Hairston v. Gainesville Sun Publ'g Co.*,

> The burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext.... Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue.

9 F.3d 913, 921 (11th Cir.1993); *see also Blue Moon Enterprises, Inc., v. Pinellas Co. Dep't of Consumer Protection*, 97 F.Supp.2d 1134, 1138 (M.D.Fla.2000) ("The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried.") Applying the burden shifting framework set forth above, the court now addresses Defendants' Motion For Summary Judgment on Plaintiff's claim of discriminatory discharge.

### I. PLAINTIFF'S INITIAL BURDEN

█ Plaintiff has the initial burden of establishing the following prima facie elements of discriminatory discharge: (1) that he is a member of a protected class; (2) that he was qualified for the job from which he was discharged; (3) that he was discharged; and (4) that either his former position was filled by someone not in his protected class, that he was terminated while others having comparable or lesser qualifications and not in his protected class were retained, or that he was subject to a different application of work or disciplinary rules. *See Givhan v. Electronic Eng'r. Inc.*, 4 F.Supp.2d 1331, 1339–40 (M.D.Ala. 1998) (citing *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995)); *see also Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir. 1982).

Because Plaintiff is black, it is undisputed that he belongs to a protected class. Further, it is undisputed that Plaintiff was discharged and that his former position was filled by someone not in his protected class. Accordingly, the court finds that Plaintiff has successfully established elements one, three, and four of the prima facie case set forth above. However, Defendants challenge the second prima facie element arguing that Plaintiff was not qualified for the position primarily because he lacked the mechanical skills to successfully perform his assigned duties.[13] (Br. at 3; Reply at 5.) Plaintiff, on the other hand, asserts that he complied with all of the objective requirements for the job, thereby satisfying the qualification element of his prima facie case. (Resp. at 5.) The court agrees with Plaintiff.

█ To prove that he was qualified, Plaintiff need only show that he met the minimum qualifications of the job. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir.1998); *see also Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1275 (M.D.Ala. 1998) ("Consistent with long-standing pre-

---

**13.** Defendants also briefly contend that Plaintiff was not qualified for the position "based upon his history of drug use." (Mot. at 5.) However, Defendants fail to elaborate on, or produce any evidence in support of, this contention. Accordingly, the court finds no merit in said contention and will forego any further discussion thereof.

cedent that plaintiff's prima facie burden is not an onerous one, the Eleventh Circuit has held that the [qualification] element of the prima facie case—that plaintiff be qualified for the position—means that plaintiff satisfies the minimum qualifications of the job."). Here, Defendants had no written qualifications for the job from which Plaintiff was discharged. Thus, it is not clear what the minimum qualifications for the job were. However, the record reflects that shortly after hiring Plaintiff, Defendants required him to submit copies of his driver's license, commercial driver's license ("CDL"), Alabama Department of Public Safety Driver License Abstract, and social security card. These requirements appear to be the only qualifications for the job at issue, and it is undisputed that Plaintiff satisfied them. Accordingly, the court finds that Plaintiff has presented evidence demonstrating that he met the minimum qualifications for the job from which he was discharged.[14] Therefore, based on the foregoing, the court finds that Plaintiff has established a prima facie case of race discrimination, thereby creating an inference of unlawful discrimination.

## II. DEFENDANTS' INTERMEDIATE BURDEN

The burden now shifts to Defendants to rebut the inference of discrimination by presenting a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Defendants' burden at this point is one of production and not persuasion. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Moreover, the Eleventh Circuit has described this intermediate burden as "exceedingly light." *Perryman,* 698 F.2d at 1142.

In their Brief, Defendants summarize the reasons for terminating Plaintiff's employment as follows:

> [P]laintiff refused to lubricate the truck (G. Dempsey Dep. at 10), indicated he could not install a license plate on a new truck (G. Dempsey Dep. at 8), failed to drain the air tanks unless reminded (G. Dempsey Dep. at 10), destroyed two front tires (G. Dempsey Dep. at 30–31), destroyed a control tower in the truck (G. Dempsey Dep. at 32), improperly rolled the tarpaulin after dumping, causing it to tear (G. Dempsey Dep. at 38), and caused damage to a customer's premises when he tore down power lines and a utility pole when he drove off without lowering the dump bucket (G. Dempsey Dep. at 42 and 43).

(Br. at 3–4.)

After careful consideration of each of these reasons proffered by Defendants and the evidence in support thereof, the court finds that Defendants have successfully met their exceedingly light burden of production, thereby rebutting Plaintiff's prima facie case of discrimination.

## III. PLAINTIFF'S BURDEN OF PROVING PRETEXT

The burden now shifts back to Plaintiff to present "evidence sufficient to permit a reasonable factfinder to disbelieve [Defendants'] proffered nondiscriminatory explanation[s]." *Combs,* 106 F.3d at 1543. Such evidence may consist of any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" so as to allow a "reasonable factfinder to find [Defendants' reasons] unworthy of cre-

---

**14.** Defendants do not seriously contest that Plaintiff was, at least, minimally qualified. Indeed, the fact that Defendants hired Plaintiff in the first place indicates that Plaintiff met the threshold requirements for the job. *See Lane,* 13 F.Supp.2d at 1275. Defendants simply contend that Plaintiff's job performance was unsatisfactory because, inter alia, he lacked certain "mechanical skills." (Br. at 3; Reply at 5.) However, Defendants proffer this argument as a reason for terminating Plaintiff's employment and not to disprove that Plaintiff fulfilled the minimum qualifications for the position he held. The court is, therefore, unpersuaded by this argument as applied to Plaintiff's prima facie case, but will consider said argument in determining whether Defendants carry their intermediate burden detailed in the section to follow.

dence." *Id.* at 1538. "When such evidence of pretext is presented, summary judgment is due to be denied. It then becomes the jury's function to determine whether the inference of discrimination created by the prima facie case, in conjunction with the evidence questioning the defendant's purported reasons, is enough to prove intentional discrimination." *Lane,* 13 F.Supp.2d at 1276.

■ With the exception of the pole incident, Plaintiff, in his Affidavit, vehemently denies each allegation that Defendants proffer in justification of their decision to terminate Plaintiff's employment. (Pl.Aff. at 2–4.) Although Plaintiff admits that the pole incident occurred, he asserts that there was no damage resulting to the property or to his truck. This assertion is corroborated by Dempsey's own testimony. (G. Dempsey Dep. at 44) (Dempsey initially thought that he would have to pay $600 in damages resulting from the pole incident, but later found out that he did not "have to pay that [$]600.") However, Defendants maintain that the pole incident was one of the primary reasons for Plaintiff's termination because it resulted in damage to their customer's premises. (Br. at 4; Reply at 6.) Consequently, the court finds that a factual issue exists with regard to the pole incident and that Defendants' reliance on said incident as a justification for their decision to terminate Plaintiff's employment appears contradictory.

Another contradiction or inconsistency exists with regard to Defendants' allegation that Plaintiff destroyed the control tower in his truck. The control tower is a mechanism inside of Defendants' trucks used to "control the dump hoist." (G. Dempsey Aff. at 32.) Defendants contend that Plaintiff mishandled the control tower inside of his truck, thereby causing it to break.[15] (*Id.* at 32–33.) Although the control tower incident is one of the main reasons that Defendants proffer for Plaintiff's discharge, they admit that there is no direct proof that Plaintiff actually broke the control tower. (*Id.* at 33.) In contrast, Plaintiff testifies that the control tower incident "just never happened" and that Defendants are simply "making it up to try and cover up getting rid of [him]." (Pl.Aff. at 3.) Plaintiff submitted this testimony on April 7, 2000, yet Defendants failed to rebut said testimony or otherwise clarify the control tower incident in their April 14, 2000, Reply. Accordingly, the court finds that a factual issue exists as to the control tower incident and that Defendants' reliance on said incident as a justification for their decision to terminate Plaintiff's employment is called into question.

Additionally, while Defendants apparently contend that Plaintiff was sometimes unwilling to perform tasks assigned to him, Plaintiff unequivocally testifies that he never refused to do anything he was told to do. (Pl Dep. at 52.) Plaintiff's testimony is verified by Dempsey's own statement that "[Plaintiff] never refused anything I told him to do." (G. Dempsey Dep. at 11.) Therefore, the court finds yet another contradiction within Defendants' proffered reasons for Plaintiff's discharge.

Finally, Defendants advance numerous accusations that Plaintiff lacked certain mechanical skills, and that these shortcomings resulted in damage to Defendants' property and prevented Plaintiff from successfully performing his job. (Br. at 3–5; Reply at 5–6.) Accordingly, Defendants argue that Plaintiff was discharged because his work was unsatisfactory and he was not qualified for the job.[16] However,

---

**15.** The court will hereinafter refer to this event as the "control tower incident."

**16.** The court notes that Defendants originally told Plaintiff that he was being discharged because there was not enough work for him to do. (Pl.Dep. at 42–43.) However, Defendants now assert that Plaintiff was discharged because his work was unsatisfactory and he was not qualified for the job. (Br. at 3–5; Reply at 5–6.) Consequently, the court finds yet another contradiction within Defendants' proffered reasons for Plaintiff's discharge. *But cf. Conner v. Fort Gordon Bus Co.,* 761 F.2d 1495, 1499 (11th Cir.1985) ("Failure to explain decisions to employees may prove bad management but it does not necessarily prove discrimination.").

Defendants' subjective accusations, which are vigorously disputed by Plaintiff, (Pl. Aff. at 2–4.), are not supported by objective evidence because there are no written employment records showing that Plaintiff's work was unsatisfactory and there are no written employment qualifications showing that Plaintiff was unqualified. The Eleventh Circuit has held that when an adverse employment decision is based on the subjective analysis of differently-raced supervisors, there is a "ready mechanism for racial discrimination." *Carter,* 132 F.3d at 644. Furthermore, when an adverse employment decision is based on unwritten employment policies, the Eleventh Circuit has recognized the decision should be viewed with "greater scrutiny," *Howard v. BP Oil Co.,* 32 F.3d 520, 525 (11th Cir.1994), and may constitute "circumstantial evidence of discrimination." *Carter,* 132 F.3d at 644. Consequently, after carefully scrutinizing Defendants' subjective accusations, the court finds that said accusations do not warrant summary judgment for Defendants, but rather, lend support to Plaintiff's opposition to summary judgment.

Therefore, based on the foregoing, the court finds that Plaintiff's evidence has placed material facts relating to the issue of pretext at issue. This evidence, viewed in light most favorable to Plaintiff and considered in conjunction with the unwritten policies [17] and contradictory reasons that Defendants proffer to justify Plaintiff's discharge,[18] leads the court to conclude that Defendants' Motion For Summary Judgment on Plaintiff's discriminatory discharge claim is due to be denied.

The court, however, emphasizes that its decision does not mean that Plaintiff has proven his case. A reasonable jury may very well believe that Defendants terminated Plaintiff's employment based on legitimate reasons and not discriminatory ones. Plaintiff will have to persuade the jury of such, and his burden at trial will be heavier than the burden he has faced at summary judgment. *See Howard,* 32 F.3d at 525 (discussing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). However, Plaintiff will have the opportunity to carry that burden.

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion For Summary Judgment be and the same is hereby GRANTED IN PART and DENIED IN PART as follows:

(1) GRANTED with respect to Plaintiff's § 1981 retaliation claim.

(2) GRANTED with respect to Plaintiff's state law outrage claim.

(3) DENIED with respect to Plaintiff's § 1981 discriminatory discharge claim.

It is further CONSIDERED and ORDERED that Plaintiff's Motion To Strike be and the same is hereby DENIED AS MOOT.

---

**17.** *See Lane,* 13 F.Supp.2d at 1276–77 (stating that employer's reliance on unwritten employment policies to justify an adverse employment decision was "enough to give the [employer] some problem on summary judgment") (citing *Carter,* 132 F.3d at 644.)

**18.** *See Combs,* 106 F.3d at 1543 (holding that a demonstration of "contradictions in the employer's proffered legitimate reasons" is sufficient evidence of pretext to defeat summary judgment).